## STRONG v. UNITED STATES.

1. The sureties of a purser, stationed at a navy yard, are liable for the defaults of their principal, in failing to disburse or account for moneys remitted to him as purser, notwithstanding the principal disbursed moneys during the period of the defalcation, which would have been disbursed by a navy agent, if there had been such an officer at that navy yard.   Such disbursement does not constitute the purser making them a navy agent as distinguished from a purser.

2. The legal effect of the provisions of the act of August 26th, 1842 (5 Stat. at Large, 535)—requiring purchases of supplies for the use of the navy to be made with the public moneys appropriated for the purpose, under such directions and regulations as the executive may prescribe—was to repeal former regulations in respect to pursers, and to require new "directions and regulations" in their place.   And since the enactment just mentioned (even if the case was not so before), pursers in the navy may be directed to make such purchases on public account, and to disburse any moneys for the use of the navy as appropriated by law.

8. Unofficial letters of a subordinate officer of the treasury are not admissible evidence in a suit for defalcation against a disbursing agent, to contradict, nor even to explain the adjustment of his accounts as shown in the certified transcripts.

4. Disbursing agents, being required by law to settle their receipts and disbursements with the accounting officers of the treasury, cannot introduce their private books in a suit for defalcation to contradict the official adjustment of their accounts.

ÉRROR to the District Court for the Northern District of Florida.

*Messrs. N. Wilson* and *E. M. Stanton, for the plaintiff in error ; Mr. Stanbery, Attorney-General,* and *Mr. Ashton, special counsel for the United States, contra.*

Mr. Justice CLIFFORD stated the case, and delivered the opinion of the court.

Examination of the exceptions to the instructions of the court will first be made, as they give rise to the principal questions presented for decision.

Exception was taken by the defendant to that part of the charge of the court in which the jury were told that the Navy Department, in requiring the principal in the bond to perform duties as purser which would have been performed

by a navy agent, if there had been such an officer at that navy yard, did not constitute him a navy agent, and that the department in so doing did not require of him the performance of duties, against defaults in which his sureties had not undertaken to protect the government.

I. Argument is hardly necessary to show that the principal in the bond was not thereby constituted a navy agent, as it is clear that navy agents cannot be appointed in any other mode than that prescribed in the act of Congress providing for their appointment. Authority to appoint navy agents is derived from the third section of the act of the third of March, 1809, which provides that " no other permanent agents " than those previously mentioned in the section " shall be appointed, either for the purpose of making contracts, or for the purchase of supplies, or for the disbursement, in any other manner, of moneys for the use of the military establishment or of the navy of the United States, but such as shall be appointed by the President with the advice and consent of the Senate."*

Prior to that time persons had been appointed, as occasion required, to act as navy agents, by the head of the department, but no such office had been created or was recognized by any act of Congress. Since that enactment navy agents have uniformly been appointed by the President by and with the advice and consent of the Senate, and it is as obvious as anything can be that they cannot be appointed in any other way.†

Such an appointment by the President, in this case, is not pretended; and it is equally clear that the evidence in the record disproves the theory that the head of the department ever intended, or attempted to confer, any such authority. On the contrary, the record proves that all the moneys in the hands of the principal in the bond were moneys remitted to him as purser, as is fully shown both by his requisitions and the treasury warrants issued by the proper officer of the treasury department.

---

* 2 Stat. at Large, 536.

† Armstrong *v.* United States, Gilpin, 399.

Pursuant to the requirements of law, he twice gave bond for the faithful discharge of his official duties, and the declaration in the suit was founded upon those bonds, in both of which the defendant was a surety. Alleged breach of the condition of the respective bonds is, that he failed to disburse and apply large sums of money remitted to him as purser for the use and benefit of the plaintiffs, as he, in his official character, was by law bound to do; and that he had neglected and refused to pay the balance, not so disbursed and applied, into the Treasury of the United States as public money. Verdict and judgment were for the plaintiffs, and the defendant sued out this writ of error.

II. Second objection to the charge of the court is, that the court erred in giving the instruction that the defendant, as surety, was liable for the defaults of the principal in failing to disburse or account for the moneys remitted to him as purser, notwithstanding he, the principal, had been required by the department to perform duties which would have been performed by a navy agent, if there had been one stationed at that navy yard.

Certified transcripts of the accounts of the delinquent purser, as adjusted by the accounting officers of the treasury, were introduced in evidence at the trial. They showed that the balance due to the plaintiffs, together with the interest since accrued, was the amount as found by the jury in their verdict, and that all the moneys charged in the accounts were moneys remitted to the principal in the bonds during the periods covered by the bonds, as alleged in the declaration.

Subsequent to the settlement of the accounts of the principal, he was duly requested to pay the balance, as thus ascertained, into the treasury, and the record shows that he neglected and refused to comply with that request. Witnesses were examined at the trial, and the parol proofs showed that he, the principal, was stationed at that navy yard, on the fifteenth day of April, 1850, and that for the period of nine months next ensuing there was no navy agent at that navy yard, and that he, in his character of purser,

made disbursements of moneys remitted to him as purser, which would have been made by a navy agent if there had been such an officer at that naval station. All such disbursements, however, were included in his accounts, as rendered to the department, and as settled by the accounting officers of the treasury, and the transcripts show that they were rendered and settled under the same heads as the disbursements made by him in the usual and strict course of his duty as purser, and it does not appear that he ever sustained any loss in making such disbursements, or that any just and legal credits claimed by him in that behalf have been rejected or disallowed.

Complaint of the defendant is not that the moneys disbursed and applied by his principal for the use and benefit of the plaintiffs have not been fully allowed in the adjustment of his accounts, but that the court erred in giving the instruction that he, the defendant, as surety, was legally liable for the balance of the moneys remitted to his principal, as purser, and which he, the purser, never disbursed or applied in any way for the use and benefit of the plaintiffs, and which he neglects and refuses to pay into the treasury.

Stripped of all circumlocution, the defence is, that the surety is not liable for the default of the principal, because some portion of the moneys remitted to the latter would have been remitted to the navy agent, if some person holding the office of navy agent had been stationed at that navy yard. No person holding that office was stationed there, and all the moneys in question were remitted to the principal in these bonds, as purser, and the record shows that he has never disbursed the amount claimed for the use and benefit of the plaintiffs, or paid it into the treasury as adjusted.

Pursers, under the act of the twenty-seventh of March, 1794, were warrant officers, but by the act of the thirtieth of March, 1812, they were required to be appointed by the President, by and with the advice and consent of the Senate, and the provision was that every purser before entering upon the duties of his office, shall give bond, with two or more

sufficient sureties, conditioned faithfully to perform all the duties of purser in the navy of the United States.*

Fixed salaries were prescribed for pursers in the navy by the act of the twenty-sixth of August, 1842, and the act provides that they shall not procure stores or supplies on their own account and dispose of the same to the officers and crews of the public ships for their own benefit.† Although pursers are forbidden to procure such stores or supplies on their own account, still the same section provides that all purchases of clothing, groceries, stores, and supplies of every description for the use of the navy, as well for vessels in commission as for yards and stations, shall be made with and out of the public moneys appropriated for the support of the navy, under such directions and regulations as may be made by the executive for that purpose. Such disbursements the department, under the authority of that provision, might undoubtedly direct to be made by the navy agent at navy yards where there was such an officer stationed, or by the purser assigned to that station; or the head of the department might direct the purchases to be made partly by one and partly by the other of those officers.

Terms of the provision forbidding the employment of temporary agents for the purpose of making contracts, or for the purchase of supplies, fully justify the conclusion that pursers may be employed for those purposes, or for the disbursement in any other manner of moneys for the use of the navy of the United States.‡

Paymasters of the army and pursers of the navy, as well as "the other officers already authorized by law," are excepted from the prohibition; and the clear implication from the language employed is that pursers in the navy, if so directed by the head of the department, were, under that provision, as fully competent to make contracts, purchase stores and supplies, or disburse moneys for the use of the navy, as paymasters of the army or other officers authorized by law are for the army or other branches of the public service.

---

* 1 Stat. at Large, 350; Id. 699; 3 Id. 350.     † 5 Id. 585     ‡ 2 Id. 536.

Usage has sanctioned that construction of the provision, and the practice has been found to be so convenient that navy agents are now seldom or never employed.  Allusion is not here made to purveyors of public supplies, or to military agents, because those offices have been abolished, as will be seen by reference to subsequent acts of Congress.*

Views of the defendant are that the duties of a purser are entirely different and distinct from those of a navy agent, but he fails to refer to any act of Congress which supports the proposition.  Nothing of the kind is pretended, but his theory is, that the navy regulations of 1818, not only prescribe the official duties of pursers and navy agents, but mark the limits of their responsibilities and measure the extent of the obligations incurred by their sureties.  Under those regulations pursers might procure clothing, groceries, stores, and supplies for the use of the navy, on their own account, and dispose of the same to the officers and seamen for their own benefit.  Abuses grew out of this system, and Congress interfered and gave fixed salaries to pursers, and provided that all such purchases should be made with public money, and on public account, under such directions and regulations as the executive should prescribe for that purpose.  Effect of the new law was to repeal the old regulations in relation to pursers, and to authorize new directions and regulations in their place, and the record shows that the old regulations are not applied in that branch of the public service.

Strong doubts are entertained whether the old regulations ever had any such effect as is supposed by the defendant, but if they had, it is clear that the new regulations necessarily superseded their operation in that behalf.  Necessary conclusion is that none of the moneys remitted to the purser in this case were remitted for any object or purpose not comprehended within his official duties, and that the instruction of the court under consideration was correct.

III. Next exceptions to be considered are those taken by the defendant to the refusal of the court to instruct the jury

---

* 2 Stat. at Large, 697, 698.

as his counsel requested.   Prayers refused are in substance
as follows: 1. That the second bond was only intended to
cover the duties of the principal as purser, and that the de-
fendant was not responsible for any defalcation of the prin
cipal as acting navy agent.   2. That the jury must ascertain
the balance referable exclusively to receipts and disburse-
ments of the principal as purser.   3. That if the jury find it
impossible to determine what portion of the indebtedness
of the principal accrued as purser, then their verdict must
be for the defendant.

Statement of the record is, that those requests were re-
fused, as tending to mislead the jury, and it is clear that they
might also have been refused upon the ground that the
theory of fact assumed is contradicted by the record and all
the evidence in the case.   1. Defendant was not sued for
any defalcation of his principal as navy agent, nor did the
plaintiffs introduce any evidence to sustain any such claim.
Such an instruction, therefore, as that asked in the first re-
quest, was unnecessary and inappropriate, and the request
was properly refused.   2. Second request was also properly
refused, for the reason given by the court, and also because
it erroneously assumed that there was evidence in the case
tending to show that the principal disbursed moneys as navy
agent as well as purser, which finds no support in the record.
3. Third request was properly refused for the same reason,
as it assumed that the evidence raised the question whether
some portion of the indebtedness of the principal did not
accrue on account of moneys received and disbursed by him,
not as purser, but in some other official character, which is
a theory entirely without support.

IV. Certain exceptions were also taken by the defendant
to the rulings of the court in excluding an official letter
written by the fourth auditor to a Senator in Congress in
respect to the accounts of the principal, and also to the rul-
ing of the court in excluding a letter written by the chief of
the Bureau of Yards and Docks to the commandant of the
Pensacola navy yard, and also to the ruling of the court
in excluding the private books of the principal, for the pur-

pose of showing that he, the principal, received and disbursed moneys during that period as navy agent, and to contradict his accounts current, in which he charged and credited himself as purser. Our conclusion is, that these several rulings are correct. 1. Unofficial letters of subordinate officers are not admissible in evidence, in controversies like the present, to contradict, nor even to explain the official adjustment of the accounts as shown in the duly certified transcripts; and if not, then it is clear that the letters were properly excluded as immaterial and irrelevant. 2. Disbursing agents are required to settle their receipts and disbursements with the accounting officers of the treasury, and their private books are inadmissible to control that official adjustment.

All of the exceptions are overruled, and the judgment must be

AFFIRMED.