## TAYLOR v. STATE.

No. 2381.

Court of Civil Appeals of Texas. Waco.

Jan. 22, 1942.

Rehearing Denied Feb. 19, 1942.

Darden & Burleson, Bryan & Maxwell, and Joe W. Taylor, all of Waco, for appellant.

Gerald C. Mann, Atty. Gen., Pat Coon, Geo. W. Barcus, and Richard H. Cocke, Asst. Attys. Gen., and Willard McLaughlin, of Waco, for appellee.

HALE, Justice.

Appellant, Mrs. J. W. Taylor, having first obtained permission, sued appellee, the State of Texas, to recover damages on account of permanent injury to 120 acres of land. Her cause of action was predicated upon the provisions of Article I, Sec. 17, of the Constitution of Texas, Vernon's Ann.St. She alleged that appellee had caused a drainage ditch to be constructed along the south side of its highway and, in order to empty the waters from such ditch into the Brazos river, had cut the west bank of said river at a point where the same intersects with said ditch; that as a proximate result thereof, when the river rises above the elevation of the bottom of the ditch, a part of the waters of said river which previously flowed within its banks are now diverted and caused to flow out of the normal flood channel of the river into the ditch and to travel in a westerly direction through said ditch to a point where the same intersects a natural depression and thence in a southerly direction across her land; that on or about May 19, 1935, a rise of waters came down the Brazos river from the north which, by reason of the foregoing facts, resulted in the injuries and damages complained of. Appellee answered with a general denial and alleged, among other things, that appellant's land was subject to overflows prior to such construction and that the injury for which damages were sought was the result of an act of God.

The case was submitted to a jury on twenty-one special issues, in response to which they found, in substance, that the construction of the ditch diverted a part of the waters of the Brazos river in May, 1935, and proximately caused the same to flow over appellant's land, but that no part of her land had been reduced in value as a result of such diversion; that appellee did not construct the ditch, cutting the same to and through the banks of the river, and that appellant's land would have been overflowed in May, 1935, even though the ditch in question had not been constructed; that the flood of May, 1935, was an act of God, which act was the sole proximate cause of the damages complained of. The court thereupon rendered judgment that appellant take nothing and hence this appeal.

By numerous assignments, appellant contends that the judgment should be reversed because each of the findings of the jury (except those to the effect that the construction of the ditch diverted the flow of waters over her land in 1935) is contrary to the undisputed evidence and is so against the overwhelming preponderance of the competent testimony as to be clearly wrong. It was shown without dispute that in 1933, appellee's Highway Department caused a new bridge and highway to be erected and constructed over the Brazos river near the city of Waco in the vicinity of appellant's land which was situated approximately 1,-000 feet south of the highway and immediately west of the river. In the construction of the highway approaching the bridge from the west, appellee's agents built up an embankment, which, at the point where it touches the bridge, is approximately 35 feet above the surrounding ground level, is 180 feet wide at the base and 40 feet wide at the top. This embankment slopes gradually down-grade from the bridge toward the west with a corresponding decrease in dimensions until at a point 1,300 feet from the bridge its surface area levels off at an elevation of 15 feet above the surrounding ground, with a width of 100 feet at the base and 40 feet at the top. The project plans disclosed a drainage ditch to be cut along the south side of this embankment on into the Brazos river. This ditch, at its nearest point to the river, was cut by appellee's agents to a depth of at least 10 or 12 feet below the ground level and to a width of about 50 feet across the bottom, its depth and width gradually decreasing with the increase of distance from the river toward

the west. It appears that the ditch was cut primarily to obtain excavation for the construction of the required embankment, thereby saving the expense incident to a long haul of dirt. It was further shown without dispute that flood waters did flow from the Brazos river in May, 1935, and in September, 1936, over and across appellant's land to the injury and damage of portions of the same.

The evidence in the case is too voluminous to be here set forth even in the briefest summary, consisting as it does of maps, photographs, documents and the verbal testimony of some 25 witnesses. We deem it sufficient to say that while the evidence was adequate to sustain findings favorable to appellant on all issues submitted to the jury, yet nevertheless, in our opinion, the facts showing the liability of appellee and the amount thereof, if any, were not established by the undisputed evidence, and we cannot say that all material findings on the controlling issues submitted are so against the overwhelming preponderance of the testimony as to be clearly wrong. We therefore overrule appellant's assignments based upon the findings of the jury.

During the trial appellee offered in evidence exhibits 47 and 44 purporting to show the flood stages of the Brazos river at Waco for the years 1884 to 1933, and 1933 to 1936, respectively. Each of these exhibits was certified to by the Director of the Geological Survey, Department of the Interior of the United States, under the seal of that department as being true and literal exemplifications "of pages 333 and 334 of Water-Supply Paper 771, a report by the Geological Survey," and "of a sheet in the files of the Geological Survey," respectively. Each certificate recited that it was executed pursuant to the act of Congress, approved August 24, 1912, 37 Stat. 497, U.S.C.A. title 5, sec. 488. Exhibit 47 showed upon its face that the source of the data therein contained as to the gauge-heights of the Brazos river was the records of the U. S. Weather Bureau. Appellant seasonably objected to the admission of each of these exhibits in evidence upon grounds substantially as follows: (1) the information therein contained is hearsay; (2) there is no showing that the reports upon which the data are based were made under oath and appellant has had no opportunity to examine the person or persons making the same; (3)

the documents and the information therein contained form no part of any official record required under the Federal Statutes to be kept; (4) the originals have not been shown to be proved up, acknowledged or executed in the manner required by law so as to admit them to record; (5) the copies are not authenticated under the seal of the proper person as required by law. The court overruled the objections so made and admitted the exhibits in evidence and to which appellant duly excepted. Appellee also placed in evidence, over the same objections, a series of contour maps made by its engineers showing the elevation above sea level of the area in which appellant's land is situated, with certain of the gauge-height information contained in exhibits 44 and 47 depicted thereon, the flooded areas for different years being superimposed on the several contour maps in red coloring. The action of the trial court in thus admitting this evidence is made the subject of additional assignments of error which are duly presented for our consideration.

The office of the Director of the Geological Survey was established by act of the Congress of the United States in 1879 under the Interior Department. The Federal Statutes provide that this officer shall have the direction of the Geological Survey, and the classification of the public lands and examination of the geological structure, mineral resources, and products of the national domain. He and the employees whom he selects are also charged with the duty of making certain topographic surveys and of making an annual report of operations which shall accompany the annual report of the Secretary of the Interior. However, we can find no provision in the Federal Statutes which authorizes or requires the Director of the Geological Survey, or any employee whom he may select, to gauge rivers or to collect or preserve data relating to the flood stages of any river. See U.S.C.A. Title 43, § 31 to 46. On the other hand, it is expressly provided by act of the Congress that the chief of the Weather Bureau, under the Secretary of Agriculture, shall have charge of the gauging and reporting of rivers. U.S.C.A., Title 15, § 313.

Title 5, §§ 488 and 490 of U.S.C.A., provides, in substance, that the Secretary of the Interior, the head of any Bureau, office, or institution, or any officer of that department, may furnish authenticated

copies of any official records within his custody which shall be admitted in evidence equally with the originals thereof. Title 28, § 661 of the U.S.C.A., provides, in substance, that copies of any records in any of the executive departments authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof. The sound reason underlying these and similar statutory enactments, which have the effect of depriving a litigant of his usual right to cross-examine a sworn witness, is the fact that the original records properly lodged in any of the executive departments of the government are ordinarily made under the sanction of an oath of office and in the discharge of an official duty by a duly accredited agent appointed for that purpose. When a document or paper is improperly or incidentally lodged in an executive department and forms no part of the official records authorized or required by law to be kept in that department, the reasonableness of such statutes as a rule of evidence disappears and the provisions thereof are and of right ought to be inapplicable to any such document or paper. American Jurisprudence, Vol. 20, § 1023, et seq; Corpus Juris, vol. 22, § 901, et seq. This appears to be the rule of evidence applied in the Federal jurisdiction. Strong v. United States, 6 Wall. 788, 18 L.Ed. 740; United States v. Johnson, 8 Cir., 72 F.2d 614, and cases cited; Mohawk Condensed Milk Co. v. United States, Ct.Cl., 48 F.2d 682; Block v. United States, 7 Ct.Cl. 406. It is clearly the established rule in this state. Shifflet v. Morelle, 68 Tex. 382, 4 S.W. 843; Rogers v. Pettus, 80 Tex. 425, 15 S.W. 1093; Heintz v. Thayer, 92 Tex. 658, 50 S.W. 929, and 51 S.W. 640; Southwestern Surety Ins. Co. v. Anderson, 106 Tex. 46, 155 S.W. 1176 ; Guerra v. San Antonio Sewer Pipe Co., Tex.Civ.App., 163 S.W. 669; Falls County v. Young, Tex.Civ.App., 77 S.W. 2d 912, error dismissed; Verschoyle v. Holifield, 132 Tex. 516, 123 S.W.2d 878.

■ This is the second appeal of this case, the opinion on the former appeal being reported in Taylor v. McLennan County, Tex.Civ.App., 120 S.W.2d 134. By reference to the former opinion it will be noted that upon the first trial appellee introduced the same evidence now complained of and the judgment was reversed by this court because of the error of the trial court in admitting the same. The only distinction we can find between the question decided on the former appeal and the question now presented for decision on this appeal is that on the first trial said exhibits were certified to by the Secretary of the State Board of Water Engineers of the State of Texas, whereas on the present trial the same exhibits were certified to by the Director of the U. S. Geological Survey. If a certified copy of the records of the State Board of Water Engineers was incompetent to prove up the original records of the U. S. Weather Bureau on the first trial, then we can perceive of no valid reason why a certified copy of the records of the Director of the U. S. Geological Survey should have that effect on the second trial. While in our opinion a copy of any record authorized or required by law to be lodged in the U. S. Weather Bureau, when correctly certified to by a proper officer of that department, would prove the existence and contents of the original, we do not wish to be understood as holding or indicating that any such record, even though relevant and properly authenticated, would necessarily become competent, admissible evidence upon another trial of this case.

■ Since the evidence complained of was improperly admitted, we think there can be no doubt of its prejudicial effect upon the rights of appellant to such an extent as to require a reversal of the judgment. Much of the purported information contained in exhibit 47 relating to the flood stages of the Brazos river for various years prior to 1933, and the results thereof as depicted in red coloring on the contour maps hereinbefore referred to, was in material conflict with the verbal testimony of appellant's witnesses to the effect that her land had not been previously subjected to injurious overflows. This was the dominant issue upon which the constitutional liability of appellee, if any, as well as the amount thereof, was primarily dependent.

Because we have again concluded that the trial court erred to the prejudice of appellant by overruling and not sustaining her timely objections to the admission in evidence of exhibits 44 and 47, and to all other evidence necessarily predicated upon the information therein contained, the judgment appealed from is reversed and the cause is remanded for another trial.

TIREY, J., took no part in the consideration and disposition of this case.