(Nos. 37584-85-86-87, Cons.—

THE PEOPLE *ex rel.* Mike Wenzel, County Collector, Appellee, *vs.* CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.

*Opinion filed May 27, 1963.*

HUGH J. DOBBS and LOUIS F. GILLESPIE, of Springfield, and GEORGE M. HOLLANDER, of Chicago, (CARL Mc-GOWAN, of Chicago, and GILLESPIE, BURKE AND GILLESPIE, of Springfield, of counsel,) for appellant.

PAUL C. VERTICCHIO, State's Attorney, of Carlinville, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

These appeals, consolidated for purposes of review, are prosecuted by defendant, the Chicago and North Western Railway Company, from orders of the county court of Macoupin County overruling defendant's objections to property taxes for the years 1956, 1957, 1958 and 1959. We have jurisdiction because the revenue is involved.

The pleadings in each case consisted of the application of the county collector for judgment for the taxes paid by defendant under protest in each particular year, and the objections of defendant to allegedly excessive taxes levied against its property. With respect to each year the objections alleged that defendant's property in Macoupin County

had been assessed at its full, fair cash value by the Department of Revenue, (a fact here conceded by the plaintiff-collector to be true,) but that locally assessed property, even after giving effect to the multiplier or equalization factor certified by the Department for each year, had been assessed at no more than 42.70% of full, fair cash value for the years 1956, 1957 and 1958, and at no more than 55% for the year 1959. Continuing, the objections alleged that the under-assessment of the locally assessed property was deliberate on the part of the State and local officials concerned, that it was constructively fraudulent, and that the undervaluation of locally assessed property resulted in excessive, illegal and discriminatory taxes on defendant's property, the recovery of which was prayed. We note in passing that the issues raised by these objections were the same as those first considered by this court in *People ex rel. Hillison* v. *Chicago, Burlington and Quincy Railroad Co.* 22 Ill.2d 88, and *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Co., 22* Ill.2d 104, and that the county court had the benefit of those decisions when it entered the orders from which appeal has been taken. Here, however, evidentiary problems are presented which did not arise in the *Hillison* and *Kohorst* cases.

At the hearing on the objections, defendant, to overcome the presumption that the taxes were just and that the officials who had administered local assessment and equalization had honestly and properly performed their duties, (*People ex rel. Reinhardt* v. *McRoberts, 22* Ill.2d 282,) followed the course of the taxpayers in *Hillison* and *Kohorst* and sought to introduce into evidence studies of the Department of Revenue relating to the assessment level of Illinois property in general, and to the ratio between full value and assessed value in particular. These ratio studies, we need state only generally in view of the issues raised in these appeals, disclosed that both the county assessment and the equalized county assessment were considerably less than

full, fair cash value for each of the years in question. As was true in *Kohorst,* defendant also introduced testimony explaining the ratio studies and expressing opinions as to their reliability, and, in addition, introduced testimony of the county supervisor of assessments to the effect that he and the county board of review sought to maintain assessments of personal property in the county at 55% of full value. The collector, in turn, introduced testimony reflecting upon the reliability of the ratio studies, and evidence designed to show that the studies had not been based upon a truly representative sampling of real-estate transactions in the county.

The trial court, in most instances, reserved the rulings on major objections to the evidence offered by both sides and, at the conclusion of the hearing, incorporated its rulings into the orders overruling defendant's objections. In substance, the court held that the studies relating to assessments for the years 1956 and 1957 were not admissible in evidence and overruled defendant's objections to the taxes for those years, presumably on the ground that defendant, without the studies in evidence, had failed in its burden of overcoming the presumption that the taxes for those years had been proper and just. As to the 1958 and 1959 taxes, however, the court ruled that the ratio study evidence was admissible, but nonetheless overruled the tax objections with an express finding that defendant's evidence did not establish that local real property was assessed at a figure less than 100% of fair cash value. Although not stated and somewhat obscured by the blanket rulings on evidence, an examination of the record leads us to believe the county court accepted the theory of plaintiff's proof that the sales-assessment method upon which the departmental studies were based, was not a reliable method for determining the ratio between the assessed value of real estate and its full, fair cash value. On appeal defendant contends that the ratio studies for 1956 and 1957 were properly admissible

into evidence, and that the studies for each of the years involved, together with the supporting papers and the testimonial evidence concerning them, were competent to establish the ratio between full and assessed value in Macoupin County.

A better understanding of the trial court's orders and the issues they raise requires, we believe, a brief description of the sales-assessment method by which the Department determines the ratio between the full and assessed values of real estate. The ratio studies involved here are the end product arrived at by such method. Assessed value is obtained from abstracts of the assessment books furnished by each county clerk after the books have been certified by the board of review. Full value is obtained from samples of actual sales in each county. Insofar as samplings of real-estate transactions are concerned, it appears that a field man goes into each county in each year and procures data on current transactions from the records in the recorder's office. The procedure followed is as prescribed in a manual issued by the Department and, generally speaking, the samplings sought are arm's length transactions between willing sellers and willing buyers. Conveyances omitted from the sampling include those between members of famiies or corporate affiliates, and those in which the grantor is an administrator, guardian, receiver, trustee, master in chancery or the like.

The field man records the data for each transaction selected on a regular card form. These cards reflect, among other things, the date of the transfer; a description of the property; the recited consideration; the revenue stamps on the deed and the value indicated thereby; the location of the property and whether it is urban or rural; and where possible a description of the improvements on the property and of encumbrances. There are also spaces for reporting the assessed value for two years, although normally only the assessed valuation for the current year is shown, and a

space for the initials of the field man who abstracted the data. In some instances the field man also inserts the ratio between assessed valuation and the consideration reflected by the deed, and where he does not it is either filled in by those editing the cards, or determined from the computation made by punch card machines. In the latter regard, the data on the field man's card is normally transferred to a punch card, and much of the subsequent tabulation and calculation is done by business machines.

Upon being received by the Department the cards are screened, or edited, to eliminate transactions which are not sufficiently reliable to be included and, from what is left, the ratio determinations and studies are made. As has been described in the *Kohorst* case, (22 Ill.2d at 110,) the ratio of assessed to full value is first determined in each transaction included in the sampling. To arrive at the county-wide ratio, the ratios for all eligible single transactions are first tabulated to determine median ratios. In Macoupin County separate medians are determined for urban and rural property, and such medians are weighted to represent the proportion which each class of property is of all the property in the county for which the ratio is being determined, and finally the weighted ratios are then averaged to determine the average weighted sales-assessment ratio for the county. Having thus determined the ratio between full and assessed value in a particular county, the Department next determines the multiplier, or equalization factor, and in order to avoid undue accentuation of the sales transactions occurring in any single year, takes into consideration not only the ratio study of the current tax year, but also the studies relating to the two years preceding.

In the instant case defendant offered into evidence the official sales-assessment ratio studies of the Department for the years 1951 to 1958 inclusive, and the edited cards on which the basic data for the 1959 ratio study was reported to the Department. These 1959 cards were produced after

the editing process had been completed, but prior to tabulation by the machine section of the Department and analysis to produce the final 1959 ratio study. Such analysis and tabulation were, however, completed in the court and, as previously noted, this analysis and the completed studies for the years 1951 through 1958, established that the county equalized assessment ratio was, in each year, considerably less than full, fair cash value. The cards upon which the 1958 study had been based were also offered into evidence, and while defendant sought to subpoena the cards used for the 1956 and 1957 studies, it appears they had been destroyed.

The offer of the ratio studies themselves into evidence was met with wide-ranging objections by plaintiff which cover some nine pages of the record. Under the reserved rulings of the court, made at the time of the final orders, the studies were admitted into evidence in the matter of the 1958 and 1959 objections, but were denied admission insofar as the 1956 and 1957 objections were concerned. The precise basis for the latter ruling was not shown, nor is it easily ascertainable under the state of the record, but in this court the grounds advanced by plaintiff to sustain the court's ruling are, first, that the documents which the ratio studies purport to tabulate and analyze, rather than the studies themselves, are the best evidence, and, second, that the ratio studies are hearsay in the absence of foundation testimony by every person who participated in the gathering and analysis of the information upon which the respective studies were based. Unfortunately, however, plaintiff has not favored us with a single authority in support of his contentions.

In considering the hearsay objection it is essential to note that the ratio studies are official records of the Department of Revenue which are made and compiled each year pursuant to statutory mandate. (Ill. Rev. Stats. 1955, 1957, chap. 120, par. 627.) At common law it has long

been settled as an exception to the hearsay rule that records kept by persons in public office, which they are required either by statute or the nature of their office to maintain in connection with the performance of their official duties, are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein. (*Lane* v. *Bommelmann*, 17 Ill. 95; *Carlin* v. *Chicago and Western Indiana Railroad Co.*, 297 Ill. 184; *Bell* v. *Bankers Life & Casualty Co.* 327 Ill. App. 321; 32 C.J.S., Evidence, sec. 644; 5 Wigmore on Evidence, 3rd ed. secs. 1631, 1670; Cleary, Handbook of Illinois Evidence, sec. 13.37.) This exception, as pointed out by Professor Cleary, is "based upon the assumptions that public officers will perform their duties and are without motive to falsify, and that public inspection, to which some such records are subject, will disclose inaccuracies." Based upon the exception, as well as the evidence which shows a supervised, systematic and careful selection and analysis of data in each year, we conclude that the 1956 and 1957 studies were admissible without the need of calling as witnesses all persons who had in some manner contributed to them. Cf. *People ex rel. Miller* v. *Chicago, Burlington and Quincy Railroad Co.* 300 Ill. 399, 406; *Hardison Seed Co.* v. *Jones,* (6th cir.) 149 F.2d 252, 257.

Nor do we find merit in plaintiff's contention that the departmental studies were not the best evidence of the ratio between full and assessed value in Macoupin County. His theory, as we understand it, is that either the deeds from which the samples were taken for the 1956 and 1957 studies, or the cards, properly identified, upon which information from such deeds had been abstracted, were the best evidence by which to prove such ratio. Quite apart from the circumstances that neither the deeds nor the cards would in themselves give evidence of the ratio without further tabulation, analysis and weighting, it is our opinion that the studies were admissible under a well recognized

exception to the rules normally attending proof by documentary originals. The exception, best described in 4 Wigmore on Evidence, 3rd ed. sec. 1230, contemplates that where a fact may be ascertained only by the inspection of a large number of documents made up of numerous detailed statements, both the impracticability of the situation and the convenience of trial demand that other evidence, which will summarily state the net result of the mass, be offered and received. (See also: *People ex rel. Blair* v. *Ervin,* 375 Ill. 435, 437; *People* v. *Preble,* 316 Ill. 233, 238; *People* v. *Sawhill,* 299 Ill. 393, 403; *Inter-State Finance Corp.* v. *Commercial Jewelry Co.* 280 Ill. 116, 119; *Reinke* v. *Sanitary District of Chicago,* 260 Ill. 380, 387.) And while the "other evidence" is normally testimonial evidence given by a witness who has examined the mass and is qualified to testify to net result or content, we see no objection to a documentary summary of the net result where, as here, the summary is an official record systematically compiled and tabulated under a statutory mandate.

We recognize that most courts, as a condition for such exception, require that the mass of documents thus summarily received in evidence be placed in the hands of the court, or at least be made accessible to the opposing party in order that the correctness of the evidence may be tested by such inspection as is desired. (4 Wigmore on Evidence, 3rd ed., sec. 1230.) This condition was met here, particularly when we consider that the State, which is both the nominal and an interested party in tax objection proceedings, (*People ex rel. Murray* v. *City of St. Louis,* 297 Ill. 199, 201-202,) has at all times had the mass and volume evidence at its disposal. As to the deeds themselves, the record discloses that they were in evidence by stipulation and agreement of the parties; and as to the cards upon which information from the deeds was abstracted, the record shows they were not available to the court or defendant because they had been destroyed by an agent of the State,

thus entitling defendant to the benefits arising from the maxim, *omnia praesumunter contra spoliatorem.* (See: *People* v. *Small,* 319 Ill. 437, 474; *Hudson* v. *Hudson,* 287 Ill. 286.) Further, it may be gathered from the record that the State had in its possession machine record cards to which the data and information noted on the cards prepared by the field man had been transferred. Under all of the circumstances, we conclude that the 1956 and 1957 studies were competent to establish the ratios for those years.

There remains for consideration the issue raised by the denial of defendant's objections to the 1958 and 1959 taxes, *viz.,* whether the sales-assessment method of determining the ratio between full and assessed value is a reliable and competent method. The testimony on this issue is detailed and voluminous, defendant's evidence and witnesses being almost repetitious of what was presented in *People ex rel. Kohorst* v. *Gulf, Mobile and Ohio Railroad Co.* 22 Ill.2d 104, 110-111, and we see no beneficial purpose in setting it forth in full. Suffice it to say that witnesses for defendant, who had wide experience in the fields of economics, taxation and statistical studies, testified that the sales-assessment method of determining ratio is a reliable, economical and easily administered method which is widely recognized and employed by various State, Federal and private agencies. An economist testifying for plaintiff, on the other hand, admitted that the sales-assessment method was one of two primary methods of determining ratio, but expressed his preference for the method where full value of the property is determined by appraisal. However, the witness had no experience in making such a study, had no idea as to the cost or practicability of the appraisal method, and conceded that the principal disadvantage of the latter method was the human errors of judgment in making appraisals. At the same time, he agreed that the sales-assessment method, being based upon actual sales had the advantage of objectivity, and that there is probably no better criterion of actual

value than what a piece of property will sell for in a market between a willing buyer and a willing seller.

Testifying more directly to the employment of the sales-assessment method in these cases, plaintiff's witness stated that he could have no confidence in a sales ratio study in which property is classified only as urban and rural, and stated that, in his opinion, every such study should be based upon a classified universe, (that is a classification of every piece of property in the county as to its use and location,) from which samples representing every class of taxable property would be taken, and the sample properties then appraised. On rebuttal, however, equally experienced witnesses for defendant testified that the classifications insisted upon by plaintiff's witness were of no consequence or usefulness unless the assessors and boards of review maintained similar classifications, which they did not, and that, even then, such a way of classification was of no significance if the same level of assessment, or percentage of full value, was maintained in the assessment of all classes of property. The same witnesses pointed out that the appraisal method of determining ratio was a costly, time-consuming method which is little used, and testified that the classification of property in Macoupin County on a rural and urban basis was all that was practical and of any use.

To further support the claimed unreliability of the sales-assessment method plaintiff introduced into evidence exhibits listing some 243 transactions selected from the land records in Macoupin County wherein, for the most part, the sales values reflected by the deeds were apparently lower than the assessed valuation. Such evidence, however, was thoroughly discredited. Less than 17 of the transactions met the criteria followed by the Department in its effort to consider only transactions where there was a willing seller and a willing buyer. Further, witnesses for defendant testified without contradiction on rebuttal, that even if the transactions selected by plaintiff were added to

the samples considered by the Department in making its studies, the ratios between assessed and full value for the years in question would not be significantly different.

We cannot say that the plaintiff's proof so detracts from the reliability of the ratio studies that they should not be accorded the same probative value they were given in the *Hillison* and *Kohorst* cases. At best the evidence shows two accepted methods by which the ratio between full and assessed value may be determined, each with its advantages and each with its disadvantages, and it is the decided weight of the evidence in this record that the sales-assessment method is the most widely accepted and used. Our statute requires only that the Department use such means as it deems "proper and reasonable" to make its studies on assessed valuations, and a mere difference in opinion as to what is the best or most reasonable method is not sufficient to bring the matter within the range of judicial review. (Cf. *Schreiber v. County of Cook,* 388 Ill. 397, 311.) On the record here, we find that the studies were reliable and competent evidence of the ratio between full and assessed value, and that, based upon the studies for the years in question, the court's findings that defendant failed to prove that local real property was assessed at less than 100% of fair cash market value are against the manifest weight of the evidence.

For the reasons stated, the orders of the county court of Macoupin County are reversed, and the causes are remanded to that court with directions to sustain defendant's objections and to determine the amount of refund to which defendant is entitled in each year.

*Reversed and remanded, with directions.*