Lombard Park District, a Municipal Corporation, Plaintiff-Appellee, v. Chicago Title and Trust Company, Not Individually but as Trustee Under Trust Agreement Known as Trust No. 36988, Maywood-Proviso State Bank, Not Individually but as Trustee Under Trust Agreement Known as Trust No. 1604, Elmhurst National Bank, Not Individually but as Trustee Under Trust Agreements Known as Trusts Numbered 634, 1983, 1985 and 1900, Lawrence A. Britton, et al., Unknown Beneficiaries of Chicago Title and Trust Company, Trust No. 36988, Unknown Beneficiaries of Maywood-Proviso State Bank, Trust No. 1604, Unknown Beneficiaries of Elmhurst National Bank, Trust No. 634, Trust No. 1983, Trust No. 1985, Trust No. 1900, and Unknown Owners, Defendants-Appellants.

Gen. No. 68–110.

Second Judicial District.

February 5, 1969.

Rehearing denied March 24, 1969.

Paul S. Schmid, of Wheaton, for appellants.

Donald J. Kreger and Thomas A. Matthews, of Chicago, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendants appeal from a judgment of condemnation as to four contiguous parcels of land located within the Village of Lombard, entered after jury verdicts. The petition to condemn included two additional contiguous parcels, as to which the trial court set aside the jury verdicts and granted a new trial on the ground that certain evidence should have been admitted, but the post-

trial motion was denied as to the parcels included in this appeal. The subject of the granting of a new trial as to the remaining parcels is included in a separate appeal pending before this court.

The judgment in this case confirmed jury verdicts in the amount of $87,500 for parcel 1, $6,000 for parcel 3, $2,000 for parcel 5, and $3,500 for parcel 6. Issues raised by the appeal are whether the court erred (1) in failing to strike the testimony of a valuation witness on the basis of whether his calculations included all of the land sought to be taken; (2) in admitting a certain geological survey hydrologic investigations map of "Floods in Lombard Quadrangle Illinois" and (3) in allowing the testimony of the village engineer of Lombard defining a "flood-plain area" under a village ordinance.

There was a jury view. The subject parcels are zoned R–1 Single-Family Residence District requiring a lot area of a minimum of 10,000 square feet and a lot width of a minimum of 75 feet. The parcels are generally surrounded by property presently being developed as an R–2 Single-Family Residence District. The zoning ordinance provides that the minimum lot area requirement in the R–2 District is 7,500 square feet and the minimum lot width is 60 feet.

There was conflicting evidence as to soil conditions based on engineering borings. The soil conditions of the various parcels range from soil which has poor weight bearing qualities to soil which has adequate weight bearing qualities for single-family construction, with the dispute existing as to the amount of land in the parcels having the various qualities.

The maximum values placed on the subject parcels by the plaintiff's witnesses were $62,000 for parcel 1, $2,400 for parcel 3, $2,400 for parcel 5 and $2,000 for parcel 6. The minimum values placed on the subject parcels by the defendants' witnesses were $131,000 for parcel 1, $4,000 for parcel 3, $2,000 for parcel 5 and $3,000 for

parcel 6. The testimony of Thomas Collins, the valuation witness for the plaintiff, which is objected to by the defendants with reference to parcel 1, was $62,000.

During Mr. Collins' testimony as to the value of parcel 1, he referred to an exhibit (No. 19) which purported to be an outline of parcel 1. He had himself prepared this exhibit the night before as a visual aid to illustrate his opinion. He testified that the exhibit was prepared from a description given to him by a park district official. On cross-examination Collins discovered and admitted that he could have and, in fact, did err in his outline of parcel 1 on the exhibit. He failed to include block no. 1 in his outline while in reality all of block no. 1 except for the south 150 feet was part of parcel 1 in the description of the property sought. On cross-examination Collins said that his valuation estimate was derived from the property shown on the map. He was asked if he made the map from the description the city official had given him and his reply was: "That is correct unless I have erred in the map and I would have to refer to my file, but I am sure that's the property I had in consideration." On redirect examination, after the mistake had been discovered, counsel for the plaintiff asked Mr. Collins to amend the map to include the proper property and then asked him if his appraisal was on the entire property and Collins responded that his appraisal included the portion he had omitted on the map.

While defendants argue that the court erred in failing to strike Collins' testimony, at least as to parcel 1, for the reason that he did not calculate the value on the entire parcel, we do not agree.

■ ■ Collins' error in preparing the map could properly be considered by the jury in weighing the competence of his expert testimony as the weight and credibility of testimony of expert witnesses is for the jury to determine on consideration of all of the factors on which his opinion was based.

■ The map, however, was simply an illustrative aid to the testimony Mr. Collins was giving. The map was not evidence in itself and once the error had been called to the attention of the jury and Collins had established that the error had not affected his opinion as to the value of the property, but rather that his valuation was based on the correct description of the parcel, the jury was not misled or confused by the mistake. The weight to be given the testimony was properly a matter for the determination of the jury. Department of Public Works v. Finks, 10 Ill2d 15, 19, 139 NE2d 267 (1956).

It should also be noted that the testimony of Mr. Sutte for the plaintiff placed a value on parcel 1 of $62,000. The jury verdict of $87,500 for parcel 1 was well above the value put in evidence by the plaintiff even without reliance on the testimony of Collins, so that the jury verdict was within the range of testimony.

We next consider the claim that it was error to introduce the United States Geological Survey as evidence. Defendants argue that the map is impermissible hearsay, while plaintiff argues that it is an official public document properly authenticated and not based upon opinion or judgment and therefore admissible as an exception to the hearsay rule.

The considerable printed legend on the map includes the following:

> "This report is a study of hydrologic data to evaluate the depth and frequency of flooding that affect the economic development of floodplains. The data provide a technical basis for making sound decisions concerning the use of floodplain lands. No recommendations or suggestions for land use regulations are made and no solutions of existing flood problems are proposed.
>
> "...

"The general procedure followed in defining flood limits was to develop flood profiles on the basis of all available data. The horizontal extent of flooding delineated on the topographic map was derived from the profiles by interpolation between contours (lines of equal elevation) and by plotting overflow limits identified during field investigations and surveys. The locations of flood limits shown on the map are only approximate because the map scale is small (1 inch = 2,000 feet) and the contour interval is relatively large (10 feet, supplemented by 5-foot-interval contours in some areas).

"The flood limits shown on the map are not necessarily those for the highest floods expected. Greater floods are possible but definition of their probable overflow limits is not within the scope of this report. The flood limits shown reflect channel conditions existing when the floods occurred. No attempt is made to appraise the effect of changes in channel conditions, waterway openings at highways and railroads, or changes in runoff characteristics of the stream caused by increased urbanization that may have taken place after the floods occurred. Protective works built after the floods of 1954 and 1961 may reduce the frequency of flooding in the area but will not necessarily eliminate all future flooding. The inundation pattern of future floods may be affected by new highways and bridges, relocation and improvement of stream channels, and other cultural changes.

". . .

"The preparation of this report is a part of an extensive flood-mapping program financed through a cooperative agreement between The Northeastern

Illinois Metropolitan Area Planning Commission and the U. S. Geological Survey. . . .

"The report was prepared by the U. S. Geological Survey under the administrative direction of William D. Mitchell, district engineer, and under the immediate supervision of Davis W. Ellis, engineer-in-charge of the project.

"Acknowledgment is made to the following agencies that supplied some of the flood data on which this report is based: the State of Illinois, Department of Public Works and Buildings, Division of Waterways; DuPage County Highway Department; and the Department of Highways of Cook County.

"Additional data were obtained from officials of municipalities located in the area, and from field investigations.

". . .

"Where floodmarks could not be identified, the profiles were constructed on the basis of flood crests determined from photographs and reports of local residents, and elevations of streambeds and lower floods. . . ."

 Generally, public records may come within an exception to the hearsay rule if required either by statute or authorized to be maintained by the nature of the office. Such records are evidence of those matters which are properly required to be maintained and recorded therein. This exception to the hearsay rule is based upon assumptions that public officers will perform their duties and are without motive to falsify, and that public inspection to which such records may be subject will disclose inaccuracies. People ex rel. Wenzel v. Chicago & N. W. R. Co., 28 Ill2d 205, 211–212, 190 NE2d 780 (1963). Records which concern causes and effects,

involving the exercise of judgment and discretion, expressions of opinion, or the drawing of conclusions, are not admissible; and since official documents are a substitute for the personal appearance of the official, charged with their preparation, in court, it is generally held that such documents, to be admissible must concern matters to which the official could testify to if he were called to the witness stand. Coal Creek Drainage & Levee Dist. v. Sanitary Dist. of Chicago, 254 Ill App 289, 313 (1928), (reversed on other grounds in 336 Ill 11, 167 NE 807 (1929); 30 Am Jur2d, Evidence, §§ 991–992).

Applying these rules to the exhibit in question (Map entitled Geological Survey Hydrological Investigations Atlas HA–143 "Floods in Lombard Quadrangle, Illinois") we find that the court erred in admitting it as substantive evidence.

Initially, there has been no showing that the Director of the Geological Survey has statutory authority or direction to record or preserve hydrological data. The Director certified the exhibit under c 43, USC § 31, but we perceive no such authority therein. It has been held that a similar survey was not admissible for this reason in Taylor v. State (Tex Civ App), 158 SW2d 881, 883–884 (1942).

We are aware of the fact that since the time of the decision in the Taylor case certain provisions have been added to chapter 2 (Geological Survey) of Title 43 of the U. S. Code. Among them are sections dealing with powers to acquire lands or interests for the use in gaging streams or underground water resources (§ 366) and cost sharing of topographic mapping or water resources investigations carried on with States. These sections must be read in connection with § 31 which establishes the duties of the Director of the Geological Survey, and viewing them as such we fail to see how water plain measurements are either authorized or in the nature of the geological survey office. We do not consider examin-

ing the geological structure and mineral resources to include floodplain determinations. The conclusion of the Department of the Interior that they are authorized under Title 43, § 31, to prepare such a map is not enough. Particular authority must be demonstrated before we can conclude anything other than this map was not authorized but rather incidentally logged in the office of the Department of the Interior.

We do not question the intention or motive of the department in preparing the map, but rather we are only concerned that the authority for such a document must be clearly demonstrated when its evidential value is controverted and its admissibility is to be determined under the official document exception to the hearsay rule.

But, in any event, there are additional evidentiary infirmities under the rules. The legend accompanying the map, as well as the map itself, reveals the dangers inherent in its admission without supporting testimony and the right to cross-examination. The legend on the map does not include the property in question within the plain of overflow of the river: the contours reveal that the area in question is a depression at a higher contour level than the highest extent of the greatest flood recorded and is located at a considerable distance from the river overflow of that flood. The legend indicates that the location of flood limits are only approximate, and that no evaluation of the effect of cultural changes in the area which could affect flooding is made. Reference is made to data received from officials in the area, and reports of local residents as well as to various state and county departments. The nature and extent of such data is not identified so that it might be related to the subject area, nor is its reliability determined, and there is no way of determining how much of the data could have been testified to by the official preparing the map. No field notes are attached or identified.

Plaintiff suggests that authority for the admission of the document is found in Reinke v. Sanitary Dist. of Chicago, 260 Ill 380, 388–389, 103 NE 236 (1913), and in People ex rel. Wenzel v. Chicago & N. W. R. Co. (supra). In Reinke, the documents which were held to be admissible were for demonstrative purposes, in support of other testimony. In Wenzel the court admitted official sales-assessment ratio-studies of the Department of Revenue compiled pursuant to a statutory mandate. We are of the opinion that neither case is authority for the admission of the document involved here.

■ The purpose of the admission of the document was to show that a substantial portion of the property in question was in a floodplain area, and upon which residences could not be built or building permits issued. In view of the testimony on behalf of the owners that the highest and best use of the property was residential, the admission of the evidence was obviously prejudicial and requires that the cause be reversed and remanded for a new trial.

We do not reach, in this view, the claim of error made as to the testimony of the village engineer which was based substantially on the defining of the floodplain area on the basis of the government map.

We therefore reverse and remand the cause for a new trial consistent with this opinion.

Reversed and remanded.

ABRAHAMSON and DAVIS, JJ., concur.