LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellant, *v.* LESLIE B. LARSEN *et al.*, Defendants-Appellees.

Second District   No. 76-508

Opinion filed December 19, 1977.

Morrison & Nemanich, of Waukegan, for appellant.

Frank M. Daly, of Waukegan, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Lake County Forest Preserve District, filed a petition on November 3, 1973, to condemn and acquire certain land owned by defendants. The jury returned a verdict of $106,000 as just compensation for the land; however, the trial court thereafter granted defendants' post-trial motion for a new trial and we have granted leave to plaintiff to appeal from that order.

The property in question is a 38.4-acre tract of vacant land located in the southeast corner of the intersection of Illinois Route 173 and the Des Plaines River in the unincorporated territory of Newport Township, Lake County, Illinois. It is bounded on the north by Route 173, on the east by 21st Street and along the south and west by the Des Plaines River. It is zoned agricultural under the Lake County zoning ordinance and there

are no public water or sewer facilities available to serve the property. The jury viewed the property and considered value opinion witnesses offered by the parties. Plaintiff's two witnesses testified to the sums of $85,500 and $76,800 as being the fair cash value of the property and defendants presented two value opinion witnesses who testified, respectively, that $211,200 and $202,000 was the fair cash value of the land.

A primary issue in the trial of this cause was whether or not the property was located in a flood plain. In seeking to establish that the land did flood on occasion and therefore was of less value, plaintiff offered in evidence its Exhibits 2 and 6 which were admitted by the trial court over defendants' objection that they were inadmissible hearsay evidence. In considering defendants' post-trial motion, however, the trial judge was persuaded that he had erroneously admitted the exhibits and, as they tended to show the land was subject to flooding, that they may have substantially affected the jury's verdict to defendants' prejudice. On that basis the trial court granted defendants a new trial.

On this appeal, plaintiff contends the exhibits were properly admitted in evidence during the trial of this cause as being within the public record exception to the hearsay rule.

Plaintiff's Exhibit 2 was identified as a certified copy of a record kept by the Lake County Highway Department, labeled "Des Plaines River Data," purporting to show water levels taken from stream gauges at a bench mark on the bridge over the river at Route 173 which is adjacent to defendants' property. Attached to this document was a certificate executed by the superintendent of the Lake County Highway Department, as the keeper of the official public records of that department, that the department has been delegated by the Illinois Division of Waterways to collect and record data from the stream gauges on the Des Plaines River in Lake County, that it has done so and that the attached record sheet is a true and correct copy of the record high water marks as observed and recorded by the Lake County Highway Department. The exhibit states the elevation of a bench mark located on the bridge is 674.61 feet above sea level and also that the recorded highest water level at that place was 669.28 feet in the period of March 31, 1960, to April 2, 1960. The second page of the exhibit contains field data and measurements of the water levels made by the highway department at that place for the years 1960, 1962, 1965, 1966, 1970, 1971 and 1972. Defendants objected to its admission on the basis that plaintiff had made no showing of the accuracy of the data recorded on the exhibit and as being hearsay.

Plaintiff's Exhibit 6 is an aerial photograph overlaid with elevation contour lines scaled at two foot intervals illustrating an area which includes defendants' property and is labeled "Flood Plain Topographic

Map, Des Plaines River Watershed, Lake County, Illinois." In support of the introduction into evidence of Exhibit 6, plaintiff produced Gordon Westerberg, a registered engineer, who testified that the contour map overlay made a portion of Exhibit 6 was a document prepared and published by the United States Department of Agriculture, Soil Conservation Service, in cooperation with the Metropolitan Sanitary District of Greater Chicago. Westerberg further testified that he caused the subject property to be surveyed and took on-site elevations which he said were the same as and verified the accuracy of the contour lines on the exhibit. He further testified that he prepared a plat of the property in issue, identified as plaintiff's Exhibit 8, in which he included the stream gauge data shown on Exhibit 2 and the surface elevation data shown on Exhibit 6 and then shaded red on the plat those portions of the subject property lying above the 669.28-foot elevation level shown on Exhibit 2 to have been the highest flood level in the area of record. As might be expected, only a small portion of the subject property was shaded red and the substantially greater portion of it was then portrayed by these exhibits as being within flood range.

Plaintiff's Exhibit 3, which was a certified copy of the Lake County zoning ordinance, was also admitted in evidence, but without objection. This exhibit contained the ordinance provisions relating to flood plain regulations of Lake County and defined a flood plain as that land the elevation of which is higher than the normal water level of a flowing natural water course, but equal to or below that of the highest flood of record. It becomes apparent when considering the data contained in the controverted Exhibits 2 and 6, together with the plat prepared, in part, from them and marked plaintiff's Exhibit 8, and in conjunction with the definition of a flood plain as shown by Exhibit 3, that the jury in determining the fair market value of the land would necessarily consider most of it to be within a flood plain. It is equally apparent that the application of Exhibits 2 and 6 would have such a serious effect on the jury's determination of the value of defendants' property that, as the trial judge considered, if the exhibits were improperly admitted defendants would necessarily have been prejudiced and would be entitled to a new trial of the issues. We will then consider whether or not Exhibits 2 and 6 are exceptions to the hearsay rule as being public records and were properly admitted into evidence.

The principal case relied upon by the trial court in granting a new trial was *Lombard Park District v. Chicago Title & Trust Co.* (1969), 105 Ill. App. 2d 371, 245 N.E.2d 298, a condemnation case in which the evidentiary issue was whether it was error to permit into evidence a United States Geological Survey map of "Floods in Lombard Quadrangle Illinois." The map on its face indicated that the flood levels represented

on it were only approximate and that the data from which the map was drawn came from various sources, including reports of local residents in the area. As in the instant case, the purpose of the admission of the document in question was to show that a substantial portion of the property being condemned was in a flood plain area. This court held in *Lombard Park District* that the document was inadmissible hearsay evidence. The reasoning of the court was twofold: First, the court noted that no showing had been made that the Director of the Geological Survey had statutory authority or direction to record or preserve hydrological data; and, second, the court indicated that the map itself by virtue of the legend on its face demonstrated its lack of reliability and the inherent danger of its admission without supporting testimony and the right to cross examination. The governing rule was stated as follows:

"[P]ublic records may come within an exception to the hearsay rule if required either by statute or authorized to be maintained by the nature of the office. Such records are evidence of those matters which are properly required to be maintained and recorded therein. This exception to the hearsay rule is based upon assumptions that public officers will perform their duties and are without motive to falsify, and that public inspection to which such records may be subject will disclose inaccuracies. *People ex rel. Wenzel v. Chicago & N.W.R. Co.*, 28 Ill. 2d 205, 211-212, 190 NE2d 780 (1963). Records which concern causes and effects, involving the exercise of judgment and discretion, expressions of opinion, or the drawing of conclusions, are not admissible; and since official documents are a substitute for the personal appearance of the official, charged with their preparation, in court, it is generally held that such documents, to be admissible must concern matters to which the official could testify to if he were called to the witness stand. [Citations.]" (*Lombard Park District v. Chicago Title & Trust Co.* (1969), 105 Ill. App. 2d 371, 378-79, 245 N.E.2d 298, 301-02.)

The court concluded that this document was not within the public record exception to the hearsay rule and its consideration by the jury required reversal of the case.

■■■ Again, in *Department of Conservation v. First National Bank* (1976), 36 Ill. App. 3d 495, 344 N.E.2d 11, this court considered a similar question, but on the facts of that case reached a different result although following the same rule. The question considered was whether or not a soil map compiled by the Soil Conservation Service, United States Department of Agriculture, and the Illinois Agriculture Experiment Station was admissible in evidence under the rule. Noting that the map was made pursuant to statutory mandate and that the admissibility of

official maps and surveys is governed by the rules applicable to other public records, the court stated that it is a settled exception to the hearsay rule that records kept by persons in public office, which they are required to maintain either by statute or the nature of their office in connection with the performance of their official duties, are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein. In *Department of Conservation* this court determined the map in question. met the test by having the necessary statutory basis for its compilation and approved its introduction in evidence in that case. We there noted that a witness called to testify in regard to the soil map had personally examined the subject property and had checked the conditions he found on that examination against the conditions reported in the soil map and confirmed the findings contained on the map stating he found no inaccuracies therein.

In the case at bar, the superintendent of the Lake County Highway Department caused to be collected the water level measurements from stream gauges in Lake County and maintained the records of those measurements in his department. That responsibility had been delegated to the superintendent by the Illinois Division of Waterways under the authorization set forth in section 23 of "An Act in relation to the regulation of the rivers, lakes and streams* * *" (Ill. Rev. Stat. 1975, ch. 19, par. 70). The Illinois Division of Waterways was originally a division of the Department of Public Works and Buildings, which, in turn, was the predecessor to the current Department of Transportation. (See Ill. Rev. Stat. 1975, ch. 19, pars. 65f, 70, 71; Ill. Rev. Stat. 1969, ch. 19, par. 70.) Section 23 provides in part:

> "It shall be the duty of the Department of Transportation to maintain stream gauge stations, and to make careful investigations of the streams of the State with reference to the carrying capacity of all such streams in times of flood and under normal conditions * * *."

Furthermore, the superintendent of highways is, by statute, the county's deputy of the Department of Transportation and is required to perform all duties of that department as prescribed by law. (Ill. Rev. Stat. 1975, ch. 121, par. 5—205.8.) We conclude, therefore, that the superintendent of highways, by reason of his office as the county deputy of the State Department of Transportation was required to and did keep the records of water levels which are shown here as plaintiff's Exhibit 2. Defendants do not suggest there are inaccuracies apparent on the face of the document nor has any evidence been presented which might tend to overcome the presumption of accuracy of such records kept by a public office pursuant to statutory authority. Defendants' bare argument of a possibility that the collection and recording process was carelessly or inaccurately done is insufficient to overcome this presumption.

■■ We find, therefore, that the hearsay objection interposed by defendants to plaintiff's Exhibit 2 has been overcome and it was properly admitted in evidence for consideration by the jury. See also *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11, 167 N.E. 807; *Village of Brookfield v. Ricker* (1920), 295 Ill. 316, 129 N.E. 100.

■■ In considering next plaintiff's Exhibit 6, we reach a similar conclusion. Defendants' objection seeks to reach the contour map overlay superimposed upon aerial photographs covering the subject property. The overlay was a topographic map prepared by the Soil Conservation Service of the United States Department of Agriculture pursuant to flood prevention, flood water and watershed protection duties assigned by Federal statute to the department. (16 U.S.C.A. §§1001, 1002, 1006 (1974).) These duties specifically include the making of investigations and surveys of the watersheds of rivers. The Soil Conservation Service is required to maintain a cartographic division to carry out its functions including therein topographic mapping (7 C.F.R. §611.20 (1976)) and flood plain topographic maps are made under uniform standards prescribed by the Soil Conservation Service.

In addition, we note that the engineer, Gordon Westerberg, authenticated the topographic data contained in Exhibit 6 through actual field inspection. His crews took elevations and verified the topographic data contained within the exhibit relevant to the subject site and Mr. Westerberg testified to the accuracy of the exhibit elevations. It is noteworthy that there is no indication on the face of plaintiff's Exhibit 6 that its representations of topographic features are inaccurate.

We conclude that plaintiff's Exhibits 2 and 6 each were properly admitted into evidence and considered by the jury in making their just compensation determination in this case. The statutory authorization for collecting the data shown on the exhibits by the respective governmental bodies was established; absent evidence of unreliability which might bar admissibility, we determine the exhibits are properly an exception to the hearsay rule as public records.

The verdict of the jury was reasonable and within the range of the evidence submitted to it. Finding as we do that the evidence objected to by defendants was properly submitted to the jury, the judgment of the trial court granting defendants a new trial will be reversed and this matter will be remanded with directions that the verdict of the jury be reinstated and judgment entered thereon.


Reversed and remanded with directions.


BOYLE and WOODWARD, JJ., concur.