THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD RUDI, Defendant-Appellant.

Second District    No. 79-703

Opinion filed April 7, 1981.

REINHARD, J., specially concurring.

Richard W. Culver, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Richard Rudi, the defendant, is an oral surgeon who was charged with aggravated battery, battery, and unlawful restraint, stemming from alleged misconduct with a patient on July 26, 1976. Defendant was convicted after a jury trial only of misdemeanor battery and fined $1,000. He appeals, contending that he was not proved guilty beyond a reasonable doubt; and, alternatively, that trial errors precluded a fair trial.

The complainant testified that she went to the dentist's office to have two molars removed. She was accompanied by her husband who remained in the reception room. She was taken to a room where X rays were taken and had a brief conversation with defendant in which he explained the anesthetic which he then gave her. The nurse was in the room at that time. She said the next thing she can remember is waking up. She felt his hand on her left breast and heard defendant's voice saying "how does it feel? Does it feel good? Do you like it?" She said she felt his hand rubbing her left breast and at some interval that he took her hand and put it on the outside of his pants "on his penis, and he had a full erection." She continued that he was pushing her hand up and down in a rubbing action and repeating "Do you like that? How does it feel? Does it feel good?" She knew it felt that there was clothing between her hand and his penis. She said she didn't hear anyone else in the room and that she kept her eyes closed because she didn't want him to know that she was

awake. She heard the door start to open and said that defendant shoved her hand back and then she heard the nurse's voice. The nurse took her to the recovery room, where she said she began crying. She proceeded to the receptionist's office where her husband paid the bill. She finally told her husband why she was crying as they were leaving the parking lot.

On cross-examination, complainant testified that she did not remember if she went back to the defendant's office to have her stitches removed. She said she wouldn't have wanted to go back to his office and that if she did go back "it was the nurse and not him." On redirect examination she conceded that stitches had been removed and that she was not seeing any other oral surgeon. She had seen Dr. Rudi on a previous occasion and had oral surgery and couldn't remember who removed the stitches after that occasion.

The complainant's husband testified that his wife was crying and almost hysterical when she emerged from the recovery room on July 26. After repeated questioning as to the reason for her crying, she finally told him what had happened as they left in the car. He said at first he was going to go back inside and that the complainant asked him not to.

The defendant's wife testified that she was working as defendant's receptionist on July 26. She said that the complainant was not crying hysterically after the operation and that when she was told about the post-operative instruction she listened very carefully.

Judith Kern testified that she was an employee of defendant on July 26, 1976, and remains in his employ. She assisted defendant during the complainant's surgery. She said that during the procedures her arms and elbows would touch the complainant's breasts and shoulders. Also, that the defendant leaned across the complainant so that his arms and elbows would be across her shoulders and chest. She further testified that during the surgery defendant stated to Mrs. Ryan: "Do you feel the pressure, Dear? Just relax and take it easy, Honey." She said that she at no time left the doctor alone with the patient. When the surgery was over she told the complainant to open her eyes, that it was time for her to go home, and that the defendant told her we were going to let her lie down for a while in the recovery room.

On cross-examination, over defendant's objection, she testified that all the nurses in the office never leave the patient when they are under anesthesia and that has been the practice in the 10 years she has worked for the defendant.

Defendant testified in his own behalf that he performed the surgery on the complainant, assisted by Judith Kern. He said he asked questions of the complainant during surgery to determine the level of anesthetic. He said that Judith Kern never left the room until they both assisted the

complainant to the recovery room. He denied he was guilty of the battery and aggravated battery charges.

The State called several witnesses in rebuttal to Kern's testimony concerning office procedure, over the objection of defense counsel. Four female witnesses testified that when they had surgery performed by defendant, they were alone in the room with defendant for a period of time. Two of the witnesses related incidents occurring in 1966-68, while the other two referred to 1974 operations.

Three experts testified concerning the effects of the drugs administered to complainant as anesthetics. In summary, the State's witness, Dr. Collins, testified that patients emerging from anesthetic are able to appreciate stimulation and that delusion or emergence delirium and hallucination are not recognized side effects of the drugs used. Defendant's expert, Dr. Ziporyn, identified documents prepared by drug companies which contain, among other things, a list of adverse side effects of the drugs used on the complainant. These side effects included delusion and hallucination. Dr. Ziporyn testified that he had witnessed patients hallucinating or experiencing confusion under the influence of Valium, which was one of the drugs given to complainant.

A directed verdict of not guilty was entered on the unlawful restraint count at the close of the State's case. The jury found defendant not guilty of aggravated battery but guilty of battery.

In arguing that the State's evidence is insufficient to sustain a conviction beyond a reasonable doubt the defendant emphasizes the complainant's failure to complain to anyone of defendant's actions until she was on her way home and to the fact that she obviously returned to the office to have her stitches removed. He argues that both of these circumstances are contrary to human experience, casting doubt on her testimony as to the actual conduct of defendant. Defendant also argues that the complainant translated innocent sensations from the fact that he and his nurse were required to make certain contacts with her in the course of the operation and to inquire about her feelings into a false accusation of impropriety due to the effects of the anesthesia. In this context he relies on various writings to support the thesis that sexual fantasies by women directed at their doctors are not uncommon.

The jury was apprised of the fact that patients can hallucinate or suffer delusions while under, or emerging from, anesthesia; but there was no evidence that complainant was not in touch with reality at the time in question. Although we consider the case to be close on its circumstances, it revolved essentially on the credibility of the witnesses and their testimony; and, barring prejudicial trial error, the proof would have been sufficient to establish guilt beyond a reasonable doubt.

We conclude, however, that the case was close and that trial errors prevented a fair trial. We are particularly concerned over the cross-examination of Judith Kern, who testified that she was in the doctor's office during the entire time and that the acts as stated by the complaining witness did not occur. The defendant argues that prior to trial the court excluded evidence of other alleged offenses which the State indicated by naming potential witnesses who had "personal contacts" with the doctor on prior occasions; and that the State by its cross-examination as to "office practices" had set the stage to present several of these same proposed witnesses in rebuttal ostensibly on the issue of the office practice relating to whether the witness or other nurses remained in the room during the surgery and until the patient came out of the anesthesia.

It should be noted that Kern initially mentioned her practice with respect to other patients in response to a proper question. When the prosecutor persisted along that line, defense counsel objected, but his objection was overruled. The prosecutor then asked the witness if all the nurses in the office followed the same practice; an objection to that question was also overruled. It is significant that none of the rebuttal witnesses testified that Kern was the nurse during their surgery.

■■■ It is improper to cross-examine a witness on irrelevant matters for the purpose of later contradicting his answers. (*People v. Kirkwood* (1959), 17 Ill. 2d 23, 30; *People v. Sisti* (1967), 87 Ill. App. 2d 107, 112.) Unless the subject of cross-examination relates to a specific relevant issue or discredits the witness as to interest or bias it will usually be considered collateral, and rebuttal testimony is inadmissible. (*People v. Persinger* (1977), 49 Ill. App. 3d 116, 124. See also McCormick, Evidence §47, at 98-99 (2d ed. 1972).) In *Persinger*, the defense sought to impeach a witness' credibility as to use of drugs by cross-examination which resulted in the witness' denial that he had ever overdosed. The defense then sought to offer a number of witnesses before the court to contradict the denial which were properly refused. (49 Ill. App. 3d 116, 124.) In *Kirkwood*, the State on cross-examination asked defendant whether he had ever been in the vicinity of the complaining witness' residence on an occasion prior to the crime with which defendant was charged and then brought in witnesses in rebuttal to testify that they had seen defendant on several occasions prior to the crime. The State attempted to justify the cross-examination and the subsequent testimony on the grounds that it went to the credibility of defendant's testimony and that it was proper impeachment. However, the supreme court held that cross-examination should be limited to matters brought out in direct-examination and held that the cross-examination and rebuttal on the collateral matter over objection was prejudicial error. 17 Ill. 2d 23, 30.

■■ The questioning of the witness Kern on cross-examination concerning

"office policy" was on a matter which had not been placed in issue on direct examination. Although she volunteered the statement concerning her personal practice, the question concerning the other nurses was improper. It introduced a clearly collateral matter on which the State should not have been allowed to impeach her answers given in cross-examination over objection. We do not decide whether Kern's volunteered statement opened the door to rebuttal of her personal practices, since none of the rebuttal witnesses testified that Kern was on duty when they were treated by defendant and two of the rebuttal witnesses testified to events prior to the time that the witness had been employed by defendant. Their testimony thus only impeached Kern's testimony concerning other nurses, which was a collateral matter improperly elicited by the State on cross-examination.

It seems clear that the effect of the rebuttal testimony was to raise the inference in the minds of the jury that the witnesses had also accused defendant of improprieties during surgery. These inferences in a close case prevented a fair trial on the issue of defendant's guilt. See *People v. Pazell* (1948), 399 Ill. 462, 469.

■█ █ We will comment briefly on several other matters claimed to be error which may again be in issue on a retrial. In examining Judith Kern, defense counsel sought to elicit testimony concerning a phone conversation between Kern and the complainant the week after July 26 in which complainant purportedly changed the time of her follow-up appointment. The court sustained the State's objections to the contents of that conversation as hearsay. On appeal the State apparently concedes that the excluded evidence was not hearsay, but argues that the defendant did not preserve the issue by making an offer of proof. Defense counsel argues that the testimony, if admitted, would have been that when the complainant called to change the appointment date she did not state she wanted someone other than Dr. Rudi to remove the stitches, which would cast doubt on her accusations. In order to preserve error alleged to have resulted from exclusion of evidence an offer of proof is generally necessary, though it need not always be formal. (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 253.) However, nothing in the present record indicates that such testimony would have been forthcoming even though defense counsel did have an opportunity to apprise the court of the purpose of introducing the conversation. In these circumstances an offer of proof is required. However, if the objection had been properly preserved this kind of evidence should not have been excluded since it raises a question as to the credibility of the accusations.

■█ Defendant has also argued that the State's expert was improperly allowed to testify as to the effects of the anesthetic drugs upon complainant. The record shows that Dr. Collins was speaking of a hypothetical

patient and not purporting to describe the complaining witness' actual impressions. In this posture the effect of drugs upon an individual is properly a subject for expert testimony.

■■■ The defense also claims that certain FDA reports were wrongfully excluded as hearsay. The defense sought to introduce into evidence documents containing lists of adverse reactions for various drugs reported to the Federal Food and Drug Administration. The exhibit contained an affidavit of the deputy director of FDA averring that the documents are official records of that agency. The defendant sought to have the exhibit admitted under the public records exception to the hearsay rule. It is well established that records kept by persons in public office are admissible as exceptions to the hearsay rule and are evidence of matters required to be recorded therein. (*People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 212.) The document should not have been stricken on hearsay grounds. The information in the document is of some relevance even though there is no information on the frequency of occurrence of side effects. The State's expert maintained that such effects never occurred, however, and it was relevant to show such effects have been reported. Nevertheless, similar evidence was presented at trial through testimony of Dr. Ziporyn and inserts provided by the drug companies and therefore the exclusion was in itself not a ground for reversal of the case before us.

For the reasons we have stated we reverse the judgment and remand the cause for a new trial.

Reversed and remanded.

LINDBERG, J., concurs.

Mr. JUSTICE REINHARD, specially concurring.

While I concur in the majority opinion, I do not agree with those portions of the opinion which find error in the trial court's rulings on two evidentiary matters.

I disagree that the State's cross-examination of defense witness Judith Kern was collateral to the issues involved. Kern directly contradicted the victim, who testified she was not aware of anyone else in the room besides the defendant and heard no other voices other than the defendant, until the door opened and she heard a nurse's voice. On the other hand, Kern testified at trial some three years after the occurrence that she was in the defendant's office during the entire time the complaining witness was there. Her testimony, elicited on cross, that she was always present with a patient from the time the patient was brought in to the time removed, was probative of the issues involved and subject to impeachment.

Accordingly, I would not find error in allowing cross-examination of this witness on office practice and subsequent impeachment of her testimony by former patients. Given Kern's long and present employment relationship with the defendant, the length of time that had transpired since the occurrence to the date of trial and the fact she was a key occurrence witness for the defendant, considerable latitude should be allowed in cross-examination to test her memory bias. See *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191.

However, as the majority correctly holds, this was a close case and it was prejudicial error for the State to call two rebuttal witnesses who testified to nurses not being present some 10 years prior to this occurrence and prior to Kern's employment. Certainly this raised the innuendo of impropriety on past occasions which was improper and prejudicial.

Also, I do not agree with the majority that certain F.D.A. reports offered by the defendant were wrongfully excluded. These were reports sent to the F.D.A. by doctors of adverse reactions to various drugs and kept as records by the F.D.A. Obviously, these reports would contain conclusions and opinions on cause and effect from a variety of circumstances upon which the accuracy of the report could not be tested by cross-examination. They were not official reports or records prepared by the F.D.A., nor were they in the nature of statistics or other similar data required by law to be kept by that agency. In my opinion, the public records exception to the hearsay rule allowing official records of a public agency into evidence is inapplicable under these facts. See *Lombard Park District v. Chicago Title & Trust Co.* (1969), 105 Ill. App. 2d 371, 245 N.E.2d 298; E. Cleary and M. Graham, Handbook on Illinois Evidence §803.12 (1979).