(No. 13549.—Judgment affirmed.)

NELLIE CARLIN, Defendant in Error, *vs.* THE CHICAGO
AND WESTERN INDIANA RAILROAD COMPANY, Plaintiff
in Error.

*Opinion filed February 15, 1921—Rehearing denied April 7, 1921.*

1. EVIDENCE—*when letter-press copies of official correspondence
are admissible to prove notice.* Letter-press copies and documents
in the records of the department of public works of the city of
Chicago are admissible to prove that a defendant railroad com-
pany had notice of an ordinance requiring it to fence its tracks,
when the copies are produced by a witness who during the period
in question had charge of the records and official correspondence
of the department. (*Curran v. Chicago and Western Indiana Rail-
road Co.* 289 Ill. 111, explained.)

2. RAILROADS—*what is admissible to prove a railroad company
had notice to fence its tracks.* To prove notice to the defendant
railroad company of an ordinance requiring it to fence its tracks
it is proper to introduce competent evidence of the company's cor-
respondence with the city in regard to its inability to comply with
the terms of the ordinance though at a place some distance from
the place of the accident, and it is also proper to introduce oral
testimony that the company had actually fenced its tracks some
years before at the place of the accident but had allowed the fence
to be broken down.

3. SAME—*ordinance requiring railroad company to fence tracks
cannot be avoided by leasing to other companies.* A railroad com-
pany required by the terms of an ordinance to fence its tracks
within a city cannot relieve itself of the obligation by leasing the
use of its tracks to other railroad companies.

4. SAME—*when failure to fence tracks renders railroad com-
pany liable for injury.* The object of an ordinance requiring a
railroad company to fence its tracks in a city is to protect persons;
and when it fails to obey the ordinance it is liable for an injury
to a six-year-old boy who came upon the right of way where the
fence should have been and was run over by a train when he fell
from a platform on which he had been playing, adjacent to the
tracks, as in such case the failure to fence may be regarded as
the proximate cause of the injury and as preventing the applica-
tion of the rule concerning trespassers. (*Heiting v. Chicago, Rock
Island and Pacific Railway Co.* 252 Ill. 466, followed.)

CARTWRIGHT, C. J., and DUNN and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

C. G. AUSTIN, JR., J. RAYMOND BARSE, and SAMUEL KASSEL, for plaintiff in error.

FINN & MILLER, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Nellie Carlin, as guardian of Nathan Flax, (the latter hereafter called plaintiff,) brought suit against the Chicago and Western Indiana Railroad Company to recover damages for a personal injury received by plaintiff on defendant's railroad. The trial resulted in a verdict and judgment for plaintiff for $7500, which judgment was affirmed by the Appellate Court for the First District. This court granted the petition of defendant for a writ of *certiorari,* and the case is brought here for review.

About one o'clock in the afternoon of October 16, 1915, plaintiff, who was then a boy six years old, was playing with two older boys on a platform adjacent to defendant's tracks. During their play one of the older boys caught the plaintiff and the other boy attempted to put snuff in his nose. In plaintiff's endeavor to pull away from the other boys he fell off the platform and his right foot was crushed by a freight train which was backing up on the track next to the platform. The platform where the accident occurred was two or three hundred feet west of Cottage Grove avenue and between Ninety-third and Ninety-fifth streets. Cottage Grove avenue runs north and south and defendant's tracks cross it in a northwesterly and southeasterly direction. The platform was between Ninety-third and Ninety-fifth streets, running east and west about where Ninety-fourth street would be if opened through. Plaintiff lived on Lyon avenue, which runs parallel with defend-

ant's tracks. A short distance west of Cottage Grove avenue is an alley leading from Lyon avenue to the right of way and tracks of defendant. Plaintiff's home on Lyon avenue was but a short distance from this alley, and on the day of his injury he left his home and passed through the alley referred to, to the right of way and tracks of defendant, going on the tracks about two rail-lengths east of the platform, which was used for the purpose of unloading milk from cars into milk wagons. The platform was about fifteen feet long and eight feet wide, was built on posts, the side nearest the track being about three feet above the ground and the opposite side about five feet. The negligence alleged is the failure of defendant to fence its right of way as required by ordinance of the city of Chicago.

The declaration in three counts sets out an ordinance enacted March 26, 1890, requiring every railroad corporation operating a steam railroad within the corporate limits of the city, within such time as may be prescribed by the mayor and commissioner of public works, to construct on each side of its tracks, in such place as such officials may approve, except at public street intersections, substantial walls or fences, of such materials, design, proportion and height as shall be determined on and approved by the mayor and commissioner of public works. This ordinance is alleged to have been re-enacted as section 1994 of the municipal code of Chicago for the year 1905 and is set out *in hæc verba;* also section 2198, which is alleged to be the same ordinance re-enacted in the revision of the municipal code for the year 1911. The third count sets out, in addition to the ordinances referred to, section 2183 of the municipal code for the year 1911, which provides that no railroad company shall operate any passenger train within the city limits at a greater rate of speed than ten miles an hour nor any freight train at a greater rate of speed than six miles an hour except as otherwise provided in section 2199. Section 2183 further provides that it shall not

apply to the operation of trains upon tracks continuously enclosed by walls or fences, or by a wall or fence on one side and public waters on the other. Said count further avers that section 2199 of the ordinances provides for certain rates of speed of trains,—thirty miles per hour for passenger trains and twelve miles per hour for freight trains,—where section 2198 has been complied with, and that defendant had enjoyed the benefits of sections 2198 and 2199 and operated its trains at a rate of speed greatly in excess of the ten and six miles per hour limit. The declaration alleges notice by the mayor and commissioner of public works to defendant to enclose its tracks; that defendant did construct fences along its right of way at and near the place of the accident but negligently failed to maintain the same and allowed them to become broken down and out of repair, and as a consequence plaintiff passed on the right of way and tracks and was injured.

Defendant contends that it was not obligated to comply with the requirements of the ordinance until it had been notified to do so, and that there was no proof of notice having been given. To prove notice plaintiff offered letter-press copies of letters and documents, which were received in evidence over objection of defendant. The first was a letter dated March 27, 1890, to "sundry railroads," signed by the commissioner of public works, requesting the companies to submit plans for fencing their tracks within the limits of the city as early as possible. At the bottom of the letter was written, "The above letter was addressed to the following railroads," followed by a list of twenty-one railroads, including defendant, and the name "Benjamin Thomas, vice-president and general manager." Also a letter dated April 18, 1890, addressed to the vice-president and general manager of defendant, signed by the commissioner of public works, saying he enclosed copies of the general specifications for the erection of fences under the ordinances recently passed and a permit to proceed under the

same issued in connection therewith. Plaintiff also introduced in evidence a paper designated as document No. 1233, headed, "City of Chicago, Department of Public Works, April 2, 1890.—General specifications relating to walls, fences, etc., for protection to railroad right of way.—Under ordinance passed by council March 26, 1890." Then followed a description of material and character of fence or wall that would be permitted. The specifications were signed by the mayor and commissioner of public works, and attached or following was what purports to be a notice to defendant to fence its tracks in Wallace street from the south line of Forty-ninth to the north line of Eighty-first street. Also what purports to be a copy of a letter dated September 23, 1890, addressed to several railroads, including defendant, stating that on July 28 the city council had passed a resolution directing that the commissioner of public works require all steam railroads to furnish a statement to what extent the ordinance recently passed requiring them to fence their rights of way had been complied with. The commissioner of public works requested the railroads to furnish the information without delay. Plaintiff also introduced a copy of a letter which is as follows:

"*January 8th, '91.*

"*Benjamin Thomas, Esq., V. P. & Genl. Mgr. C. & W. I. R. R. Co.:*

"DEAR SIR—I consulted his honor, the mayor, yesterday, in relation to the matter of fencing your tracks along a certain portion of Wallace street as per our interview of yesterday morning. It appears that even if the width of the sidewalk on the west side of Wallace street be established at four feet there will not be sufficient space for your fence, a public driveway and a sidewalk. Still, the mayor and commissioner of public works have no power to authorize the construction of a fence which will render a driveway impossible, nor have we the right to release the C. & W. I. R. R. Co. from their obligation to fence their tracks. If you can not throw your tracks further east, so as to provide for a fence without encroaching upon the driveway, I suggest that you present a brief statement of the facts in writing to the city council and ask for such relief as may be possible. If you prefer to make such statement to me I shall transmit it to the council.

"Yours truly,

W. H. PURDY, *Commissioner of Public Works.*"

Plaintiff also introduced oral evidence tending to show that several years before the injury defendant's tracks had been enclosed by a fence at the place of the accident but it had been allowed to be broken down and decay. One witness testified he lived near the place of the accident for twenty-three years and for more than twenty years had been in the milk business and handled milk from the platform in question; that there formerly was a fence on the north side of defendant's track, with some rails on it; that in October, 1915, there were some posts but no rails. Another witness testified he had lived near the place of the accident twenty-six years; that about twenty years ago a fence was built of barbed wire and wood posts; that before October, 1915, it had become worn out and broken down until only a few posts but no wire was left. That evidence was admitted over defendant's objection. Plaintiff also offered oral evidence tending to show the defendant and its lessees operated trains at that point for many years at a speed greatly in excess of that permitted by ordinance where the tracks were not fenced.

Defendant contends that all the foregoing evidence was incompetent and should not have been admitted. It is argued that no proper foundation was laid for the introduction of the letter-press copies and communications; that it was not shown the letters were actually directed to defendant or that they were mailed or forwarded to it. The letter-press copies and documents were produced by a witness who testified he had been employed in the department of public works of the city of Chicago for more than twenty-one years and during that period had charge and custody of the records and official correspondence of the department of public works. The letter-press copies and documents were preserved in bound volumes designated by numbers. They were in no sense private correspondence but related wholly to the public acts and conduct of

the commissioner of public works and were the records of such acts and conduct of the office as were necessary to be kept. They could in no sense be deemed private papers or self-serving. They were properly admitted in evidence. *Evanston* v. *Gunn,* 99 U. S. 660; *Weith* v. *Wilmington,* 68 N. C. 24; *Alderman* v. *New Haven,* 81 Conn. 137; *State* v. *Hefferman,* 243 Mo. 453.

It is further contended that the letter of January 8, 1891, related to fencing defendant's tracks along a portion of Wallace street, as did also the general specifications, to which was attached what purports to be a notice to defendant about fencing its tracks in Wallace street from Forty-ninth to Eighty-first street, and should not have been admitted because the place referred to is three miles distant from the place of the accident. They were competent on the general question as tending to show defendant had notice of the ordinance and of the city's demand that defendant should comply with it. If it be conceded,—which we do not determine,—that defendant was not obligated to fence its tracks until it had received notice to do so, the letter-press copies and documents were competent as tending to prove notice, as was also the oral testimony that it had actually fenced its tracks several years ago at the place where the accident occurred. The weight of the evidence or what it proved is not a question here for determination. If, as we hold it did, the proof fairly tended to support plaintiff's cause of action, its weight and sufficiency are not for this court to determine. In *Curran* v. *Chicago and Western Indiana Railroad Co.* 289 Ill. 111, relied on by defendant, the suit was against defendant and other railroad corporations, and the alleged negligence was the failure to fence in a remote section of the city. Some, but not all, of the evidence heard in this case was introduced in that case, and the court held it was insufficient to show that notice was given defendant and that any action had ever

been taken by it pursuant to the orders and resolutions introduced in evidence. The court said there was no evidence that a fence was ever built on the west side of the track where the injured party went upon the right of way; that the track was permitted to remain unfenced twenty-five years after the adoption of the ordinance of 1890, from which it would appear the city did not regard a fence at that point necessary. The court further said no business was carried on between the tracks and the Calumet river on either side of Ninety-seventh street extended, which was the place in question. The letter of March 27, 1890, defendant says, was introduced in the *Curran case,* but it is not referred to in the opinion of the court. The general plans and specifications for fencing railroads under the ordinance were not in evidence in the *Curran case,* and there was no proof that defendant had actually constructed a fence at the place in question. The right of way and tracks where plaintiff was injured belonged to defendant. It permitted certain lessees to operate trains over its tracks, and the proof shows trains were operated over them for years at a rate of speed not allowed where tracks were unfenced. The proof shows a fence was built on the right of way of defendant years ago and that trains are operated over its tracks at the increased rate of speed allowed. Defendant insists that the evidence does not show the trains were so operated by defendant. We think it sufficiently shows they were operated over defendant's tracks, and it is not material whether they were defendant's trains or trains of its lessees. Defendant could not, by leasing the use of its tracks to other railroad corporations, relieve itself from the obligation to fence. No proof whatever was offered by defendant that it had never fenced or been notified to fence its tracks, nor that trains had not been operated over its tracks at the place of the accident in excess of the speed permitted where tracks were not fenced. In our opinion plaintiff's evidence fairly tended to show that defendant

had been notified by the proper city authorities to fence its tracks, that it had at one time fenced them at the place in question, and had since enjoyed the benefit of operating its trains at the increased speed permitted where the tracks were fenced.

It is further contended by defendant that the court erred in admitting in evidence the ordinance of March 26, 1890, section 1994 of the ordinance of 1905, and sections 2183, 2198 and 2199 of the revised code of 1911. Section 1994 of the code of 1905 was a re-enactment of the ordinance of 1890. The ordinance of 1890 provided that steam railroad corporations operating trains within the limits of the city should, within such time as may be prescribed by the mayor and commissioner of public works, fence their tracks at such places, except at public street intersections, and in such manner, as may be determined and approved by the mayor and commissioner of public works. As re-enacted in 1905 and 1911 the ordinance was the same, except that in the re-enactments the time within which a railroad company was required to fence, and the place, were to be prescribed by the city council. With that exception the ordinance of March, 1890, was re-enacted and continued in force by the codes of 1905 and 1911. The difference referred to did not affect the obligation of defendant to fence its tracks but that obligation was continued throughout. *People* v. *Cairo, Vincennes and Chicago Railway Co.* 265 Ill. 634; *Merlo* v. *Johnston City Coal Co.* 258 id. 328; *White Sewing Machine Co.* v. *Harris,* 252 id. 361; *Curran* v. *Chicago and Western Indiana Railroad Co. supra; People* v. *O'Donnell,* 291 Ill. 178.

The declaration averred that section 2199 authorized certain rates of speed at which trains might be operated where section 2198 had been complied with. There was no error committed in admitting that ordinance in evidence.

It is also insisted by defendant that the alleged violation of the ordinances was not the proximate cause of plain-

tiff's injury. This contention is answered by *Heiting* v. *Chicago, Rock Island and Pacific Railway Co.* 252 Ill. 466. In that case the plaintiff was a boy ten years old. He entered the right of way and tracks of the defendant at a place where the ordinances required them to be fenced. They had been fenced but the fence was torn down before the time of the accident. A train was passing on defendant's tracks at the time plaintiff entered the right of way, and he ran along on the ends of the ties until he missed his footing, fell, rolled under the train and was injured. It appears from the opinion that the same ordinances were introduced and relied on by plaintiff in that case as in this case. It was contended in that case that the ordinance requiring railroad tracks to be fenced was not intended for the protection of persons and that the absence of a fence was not the proximate cause of plaintiff's injuries. Both these contentions were overruled and in a well reasoned opinion defendant was held liable. As the question was fully argued in that opinion we simply refer to it and the authorities cited therein as sufficiently answering defendant's contention on this branch of the case.

It is also insisted plaintiff was a trespasser, that defendant owed him no greater duty than to refrain from willfully and wantonly injuring him, and that the court erred in not directing a verdict on that ground. The ordinance was held in the *Heiting case, supra,* to have been passed for the protection of persons, and to hold that an unauthorized person entering upon the tracks of a railroad where it was required to be fenced could not recover because he was a trespasser would seem to practically defeat the object and purpose of its enactment. This is especially true where the injured party was a boy only six years old. This particular question was not discussed in the *Heiting case,* but the liability of the defendant to the plaintiff, who was ten years old, was established by the decision in that case. The court did not err in refusing to instruct the jury on

this subject as requested by defendant and in refusing to direct a verdict on that ground.

The judgment is affirmed.        *Judgment affirmed.*

CARTWRIGHT, C. J., and DUNN and THOMPSON, JJ., dissenting.