GRAND LIQUOR COMPANY, INC., Plaintiff-Appellant, *v.* THE DEPART-
MENT OF REVENUE, Defendant-Appellee.

First District (2nd Division) No. 61060

Opinion filed February 17, 1976.

LeRoy Winer, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Stephen
R. Swofford, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Grand Liquor Company, Inc., received a final assessment for
an alleged tax deficiency due under the Retailers' Occupation Tax Act
(Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*), and the Municipal Re-
tailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 24, par. 8—11—1),

from defendant, Department of Revenue of the State of Illinois (Department). Plaintiff then sought administrative review of that assessment in the circuit court of Cook County. The circuit court confirmed the Department's final assessment and plaintiff now appeals.

Plaintiff's brief can fairly be said to raise three issues for review: (1) whether the Department corrected the taxpayer's returns according to its "best judgment and information" as mandated by the Retailers' Occupation Tax Act (Tax Act); (2) whether the Department improperly imposed Retailers' Occupation Tax on that portion of the taxpayer's sales resulting from collecting the Cigarette Use Tax (Ill. Rev. Stat. 1971, ch. 120, pars. 453.31 *et seq.*); and, (3) whether the trial court erred in failing to rule on plaintiff's constitutional challenge to the Tax Act. In its reply brief, plaintiff raises the additional question of whether the Department improperly included a fraud penalty in its final assessment. Due to our resolution of plaintiff's initial contention, it will be unnecessary to consider the additional issues raised. The pertinent facts are as follows:

Pursuant to section 4 of the Tax Act, the Department corrected plaintiff's Occupation Tax returns according to its "best judgment and information." (Ill. Rev. Stat. 1971, ch. 120, par. 443.) Based on those corrected returns, the Department sent plaintiff a notice of tax liability. Plaintiff protested and requested a hearing.

At a hearing held on March 9, 1972, conducted by a referee appointed by the Department, plaintiff was represented by an attorney. At that time, the Department presented the corrected returns and then called an auditor employed by the Department to testify as a witness.

The auditor testified that he was assigned to examine plaintiff's books and records dealing with the Occupation Tax. To that end, he went to plaintiff's place of business on September 7, 1971, and talked with Michael DeCarlo, president of plaintiff corporation. DeCarlo agreed to make plaintiff's books and records available and directed the auditor to plaintiff's accountant. During the next week, the auditor twice contacted the accountant but was told the books and records were not yet available. The accountant called again on September 28 and informed the auditor that DeCarlo still had not brought in the books and records. During the next three weeks, the auditor unsuccessfully attempted to contact DeCarlo. The auditor finally reached DeCarlo during the first week of November. At that time, DeCarlo said he had been ill but would provide the books and records requested. When the records still had not been made available two weeks later, the auditor proceeded to correct the returns on an estimated assessment. The auditor testified that the estimated assessment was based on "a computer print-out which

states the records on file with the state in Springfield as far as payment of Retailers' Occupation Tax and Municipal Tax."

Before cross-examining the auditor, plaintiff's attorney objected to the corrected returns, stating that the computer print-out is not "the next best evidence other than books and records" and that the computer print-out is an "opinion and a conjecture of someone from Springfield other than this witness."

On cross-examination, the auditor admitted that he was not the one who programed the computer, nor did he know what information was fed into the computer. When the referee interjected that the taxpayer's books and records would be the best evidence of any tax liability, plaintiff's attorney offered to do everything he could to produce them. On that promise of cooperation, the referee offered to grant a continuance. Plaintiff's attorney accepted the continuance but also requested a subpoena for the individual who programed the computer. The referee reserved ruling on the request for a subpoena, but did grant a continuance. Plaintiff's attorney emphasized that if he was not able to acquire the books and records, we would want an opportunity to cross-examine the computer programer to determine how reasonable the computer assessment was. He concluded that in his opinion, the Department had not yet established a prima facie case.

On June 8, 1972, another hearing was held. At that hearing, plaintiff's attorney again asked the auditor what information the corrected returns were based upon. He responded:

> "It was an estimation based upon the records the State had given to the auditor from its computer, which is based upon the sales tax returns, monthly filing of these returns, the receipts."

Another discussion then ensued between the referee and plaintiff's attorney about the desirability of having plaintiff's books and records. Plaintiff's attorney agreed that the books and records would be the best evidence of any tax liability but again stated that if the books and records were unavailable, it was incumbent upon the Department to base its assessment on the "next best" evidence which he contended is more than a computer print-out. Following this discussion, the hearing was again continued on plaintiff's attorney's promise that the books and records would be produced.[1]

On February 8, 1973, another hearing was held. Although plaintiff had received notice of the hearing, neither plaintiff's attorney nor DeCarlo attended the hearing. At that hearing, the auditor testified that he at-

---

[1] The transcript of the hearing indicates that DeCarlo was present at this hearing. Although he did not testify, there is also no indication that he objected to his attorney's promise to produce the books and records.

tempted to contact DeCarlo after the last hearing in June 1972, until early September 1972. When finally reached, DeCarlo stated that he had been out of the country for all of July and August but that he would make the books available by September 25. The auditor was later informed that DeCarlo was again out of the country and would not return until October 16, 1972. Several weeks later, the auditor referred the case back to the hearing referee. At the conclusion of the auditor's testimony, the hearing referee noted that no representative of plaintiff had yet appeared and concluded that hearing by way of default.

On February 20, 1973, another hearing was conducted. At that time, a new attorney appeared for plaintiff and announced the withdrawal of plaintiff's former attorney. For the record, the hearing referee stated that plaintiff's new counsel had contacted him on February 9, 1973, informed him that he had been unable to attend the previous day's hearing and had been unable to contact the hearing referee prior to that hearing, but had requested an opportunity to appear on behalf of the taxpayer. Plaintiff's new counsel then proceeded to state that in his opinion, the corrected returns were improperly computed and that both tax acts were unconstitutional. After counsel had made his record, the hearing was concluded.

On the basis of these facts the hearing referee issued the final assessment which is now challenged by plaintiff.

■■ Plaintiff argues that the Department failed to correct its Occupation Tax returns according to its "best judgment and information" as mandated by the Tax Act. The Department responds that while returns may not be corrected arbitrarily, formal evidence is not necessary to sustain the corrected returns. The Department argues that it is only necessary to show that it acted on "some information."

In pertinent part, section 4 of the Tax Act provides as follows:

> As soon as practicable after any return is filed, the Department shall examine such return and shall, if necessary, correct such return according to its best judgment and information, which return so corrected by the Department shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due * * *. (Ill. Rev. Stat. 1971, ch. 120, par. 443.)

While no case has explicitly interpreted the phrase "best judgment and information," many cases have dealt with section 4 as a whole. They have uniformly held that the corrected returns as made by the Department are presumptively correct and that once they have been presented by the Department, the burden is upon the taxpayer to prove otherwise by competent evidence. *Anderson v. Department of Finance*, 370 Ill. 225, 18 N.E.2d 206; *Copilevitz v. Department of Revenue*, 41 Ill. 2d 154, 242

N.E.2d 205; *Quincy Trading Post, Inc. v. Department of Revenue,* 12 Ill. App. 3d 725, 298 N.E.2d 789.

While the statute itself does not require the Department to present any evidence to sustain the corrected returns, the Supreme Court has suggested that the method employed to correct the returns cannot be arbitrary or unreasonable. (*Fillichio v. Department of Revenue,* 15 Ill. 2d 327, 155 N.E.2d 3.) In its brief filed with this court, the Department agrees that the corrected returns cannot be arbitrary, but argues that no formal evidence is required to sustain the corrected return. Instead, the Department contends that it must only show that it acted on "some information." We disagree and refer the Department to the pertinent statutory language that recites "best judgment and information."

While it is clear that in seeking information upon which to correct returns, the Department is not restricted to those facts that could be introduced in evidence at a hearing following the taxpayer's notice of protest (*Du Page Liquor Store, Inc. v. McKibbin,* 383 Ill. 276, 48 N.E.2d 926), it does not necessarily follow that the Department can refuse to divulge the method used to correct the returns. There is a qualitative difference between requiring the Department to present proof sustaining its corrections and requiring the Department to explain the method used to determine those corrections.

In the instant case, the Department points to two instances in the auditor's testimony which it claims explain the method used to correct the taxpayer's returns. The auditor first testified that the corrected returns were based on:

> "* * * a computer print out which states the records on file with the state in Springfield as far as payment of Retailers' Occupation Tax and Municipal Tax."

The auditor later stated:

> "It was an estimation based upon the records the State had given to the auditor from its computer, which is based upon the sales tax returns, monthly filing of these returns, the receipts."

The Department argues that this testimony indicates that it relied on the taxpayer's past returns to estimate the tax liability. We cannot agree with such an interpretation for two reasons.

First, there is no indication in the quoted testimony that it was the "instant taxpayer's" records that were being referred to. Also, there is no indication that it was "past" records that were being used. For all that appears from the quoted testimony, the Department could have been relying on the current returns filed by the taxpayer. In that event, there is no indication why the Department's final assessment differed from that computed by the taxpayer.

Second, and more importantly, assuming that it was the taxpayer's past records the Department relied on, there is no indication of whether it was all or only some of such past records and there is not one iota of testimony of the formula used in connection with those returns to reach the final assessment. The mere fact that the Department used the taxpayer's records does not explain "how" the Department used them. It does not explain how the Department exercised its best judgment and information.

In the instant case, the auditor testified that he used a computer printout from Springfield to correct the taxpayer's returns. He was not the individual who programed the computer nor did he know what information was used to program the computer. Although plaintiff attempted to ascertain the basis for the corrected returns, it is obvious the Department was not prepared to explain the method employed. We are aware of the increasing usage of computer and electronic devices to expedite the duties of government, but we must not permit a taxpayer's right to due process to be programed out of existence.

■■ Section 4 of the Tax Act affirmatively requires the Department to act according to its "best judgment and information." The Supreme Court has required the Department to correct returns according to a reasonable method. The instant record furnishes this court with no basis on which to determine the Department's compliance with either requirement. Accordingly, the cause will be reversed and remanded to the Department of Revenue for a new hearing not inconsistent with the views expressed herein.

Reversed and remanded with directions.

HAYES and DOWNING, JJ., concur.