THE PEOPLE *ex rel.* JOE ANN PERSON, Plaintiff-Appellee, *v.* FRANK MILLER, Defendant-Appellant.

First District (5th Division)   No. 62817

Opinion filed December 23, 1977.

Ira I. Silbar, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Alan L. Fulkerson, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action was commenced on February 20, 1975, by the filing of a petition for a rule to show cause. In her petition, plaintiff, Joe Ann Person, alleged that on March 10, 1959, orders were entered by the circuit court of Cook County directing defendant, Frank Miller, to pay child support for two children. Plaintiff prayed that defendant be found in contempt for failure to comply with such orders, being approximately $12,000 in arrears, and that the court grant such other relief as it deemed equitable in order to bring to an end said arrearages. On May 2, 1975, the court entered an order finding defendant in contempt and awarding judgment to plaintiff for past due child support in the amount of $9465.03. Defendant appeals from this order, raising numerous points of alleged error. We affirm. The pertinent facts follow.

In 1959, defendant was adjudged the father of two children born to plaintiff. A daughter, Angeletta, was born on May 2, 1956, and her case was therefore determined under the bastardy act (Ill. Rev. Stat. 1955, ch. 17,

par. 1 *et seq.*, repealed by act approved July 5, 1957, 1957 Ill. Laws 1035) and defendant was ordered to pay support for a total of $1100, payable in set quarterly installments to the clerk of the court. A son, Ronald, was born on September 10, 1957, and his case was therefore determined under the Paternity Act (Ill. Rev. Stat. 1959, ch. 106¾, par. 51 *et seq.*), with the support order providing for payment of $15 per week by defendant.

Plaintiff testified that she should have received a total of $1100 from defendant as child support for Angeletta, but that she had only received $370, leaving an arrearage of $730. She further testified that she should have received $12,435 from defendant as child support for Ronald, but that she had only received $574, leaving an arrearage of $11,761. A report from the social service department of the circuit court of Cook County substantiating these figures was admitted into evidence over defendant's objections.

On cross-examination plaintiff stated that she had no records of payments made by defendant other than the statement of arrears prepared for her by the social service department. Plaintiff further testified that defendant had custody of Ronald from May 11, 1971, to the beginning of January 1974. Defense counsel then showed plaintiff two documents, one which agreed to transfer custody of Ronald to defendant and his wife, and the other which allegedly agreed to waive all rights to child support arrearages concerning Ronald. Both documents were dated April 24, 1971. Plaintiff admitted signing the transfer of custody but denied having signed the waiver of support, claiming the signature thereon was a forgery.

On redirect examination, plaintiff testified that in addition to having custody of Ronald from 1971 to 1974, defendant had custody of Angeletta for a total of approximately three months.

Defendant testified that he had mailed six money orders of $15 each directly to plaintiff. These payments were made for the support of Ronald between June 18, 1974, and August 26, 1974, and to defendant's knowledge the money orders were received since none was returned to him. Defendant identified the money order receipts as bearing his signature. Defendant stated that the last time he made support payments for Angeletta was from September of 1971 to the summer of 1972. At that time he sent plaintiff two $50 checks and approximately $300 in money orders.

In addition, defendant testified that in the fall of 1974 he purchased approximately $1000 worth of clothing for Ronald, and in the fall of 1973 he purchased approximately $300 worth of clothing for Angeletta. He stated that plaintiff had in fact signed the 1971 waiver of child support arrearages concerning Ronald in his presence.

On cross-examination defendant estimated that from 1969 to 1974 he

spent over $1800 on the children. However, he stated that he had no receipts from the clerk of the circuit court and that he had made no independent payment records. Accordingly, he was unaware of the total amount of support payments which he had made in any of the years. The last payment defendant remembered making through the clerk of the court was in 1959 or 1960. When asked why he did not make payments to the clerk's office as ordered defendant stated that he "thought this case was disposed of." In addition, since it "had been so long" and he had custody of the children he felt he was doing what was "right under the circumstances." Lastly, defendant also stated that he was an alcoholic and had not cared about the children until after he stopped drinking in 1967. Defendant later stated he quit drinking only in 1970. He admitted that he had been continuously employed for the last eight years; however, he did not make regular support payments to the clerk's office during that time.

On redirect examination defendant explained further that during the four years in which he had custody of Ronald he believed that he no longer had to pay child support. Defense counsel introduced into evidence the six $15 money order receipts which defendant had testified represented support payments for Ronald made directly to plaintiff.

Plaintiff was then called as a rebuttal witness. She stated that she had received only two of the six $15 money orders defendant allegedly sent her. She further testified that defendant was not an alcoholic and that he had always worked.

Shirley Jones was called to testify on behalf of plaintiff. She stated that she was a caseworker for the Department of Social Services. She testified that she had prepared the report which showed the payments made by the defendant for the support of Angeletta and Ronald and the total amount of arrearages on each.

On cross-examination Miss Jones testified that the information contained in the report had been obtained via telephone from the clerk's office. Another individual from the department had obtained this information from the clerk's office, and Miss Jones had no personal knowledge as to whether or not the financial reports were true and accurate.

On redirect-examination Miss Jones stated that this report was prepared in the normal course of her duties as a social worker. Defense objections to introduction of the report were sustained.

Eleanor Harmeyer next testified on behalf of plaintiff. She stated she was employed by the Department of Social Services for 10 years as a typist. In November of 1974 she contacted the clerk's office concerning the status of the instant child support orders. The clerk's office advised her of the amount of payments defendant was to have made, the date of the last payment, and the total amount paid to date. She used this information

to prepare the report which had been filed with the court in the instant case. Moreover, in 1975 Mrs. Harmeyer contacted the clerk's office three more times for the purpose of updating her report.

On cross-examination Mrs. Harmeyer stated that she had no knowledge as to whether or not the figures given her by the clerk's office were correct. The court allowed the report into evidence over defendant's objections.

Defense counsel then introduced into evidence a copy of the report of proceedings before Judge Arnold Welfeld on April 27 and June 8, 1971. These exhibits refer to the alleged agreement signed by plaintiff waiving past-due child support for Ronald and conclude with the following pronouncement by Judge Welfeld:

"Order of Court, all arrearages for support are waived and continued generally. Cash bond released."

The court thereafter made a finding of contempt in both cases and continued this cause for the purpose of entering judgment against defendant for arrearages less credits due defendant.

On May 2, 1975, an order was entered finding defendant to be in contempt of court for wilfully and knowingly refusing to make payments for the support of Angeletta and Ronald. In addition, plaintiff was awarded a judgment in the amount of $724.03 for support payments due and owing for Angeletta, and $8741 for support payments due and owing for Ronald. This appeal follows.

Opinion

■■ Defendant initially challenges the 1959 support orders by contending that the trial court lacked jurisdiction over the subject matter of both cases. Despite both the original proceedings and the numerous subsequent proceedings conducted over the years in relation to support arrearages, this issue is being raised for the first time in this court. However, the general rule is that lack of subject matter jurisdiction may be raised for the first time on appeal. (*Werner v. Illinois Central R.R. Co.* (1942), 379 Ill. 559, 42 N.E.2d 82; *Ingram v. License Appeal Com.* (1971), 131 Ill. App. 2d 218, 268 N.E.2d 469.) A decree issued by a court which lacks jurisdiction to hear and determine the case is a nullity and may be attacked at any time or in any proceeding. (*Tucker v. Tucker* (1975), 29 Ill. App. 3d 489, 330 N.E.2d 274.) While we recognize such principles as well settled, we find that they are not applicable under the particular circumstances of the instant case. Rather, we conclude that in this appeal defendant is bound insofar as the question of the trial court's jurisdiction is concerned.

Defendant's challenge to the court's jurisdiction over the paternity complaint concerning Angeletta is based on the fact that the complaint

was filed more than two years after her birth, in contravention of the requirement set out in section 16 of the bastardy act (Ill. Rev. Stat. 1955, ch. 17, par. 16). This two-year proviso has been held to constitute a condition of the right to maintain an action, and not merely a statute of limitations. (*Brown v. Box* (1967), 38 Ill. 2d 80, 230 N.E.2d 204.) While the act also provides an exception that such an action may be brought within two years from the last time the reputed father acknowledged paternity in open court (Ill. Rev. Stat. 1955, ch. 17, par. 16), there was no affirmative showing in the record that this case came within the exception. Such a showing would be necessary since this court may not presume jurisdiction to exist where a cause of action is created solely by statute, in derogation of common law. (*People ex rel. Curtin v. Heizer* (1967), 36 Ill. 2d 438, 223 N.E.2d 128.) The instant case falls within this class since the common law imposed no duty on a putative father to support his illegitimate child. (*People ex rel. Cantazaro v. Centrone* (1964), 48 Ill. App. 2d 484, 199 N.E.2d 226.) We are not persuaded by defendant's contention.

Jurisdiction of the subject matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 312 N.E.2d 620; *People v. Western Tire Auto Stores, Inc.* (1965), 32 Ill. 2d 527, 207 N.E.2d 474; *Pocahontas Mining Co. v. Industrial Com.* (1922), 301 Ill. 462, 134 N.E. 160.) Whether a complaint does or does not state a cause of action is of no importance insofar as this question is concerned. (*People v. Western Tire Auto Stores, Inc.*) The test of jurisdiction is to be found in the nature of the case and the relief sought. *People ex rel. Scott v. Janson; People v. Western Tire Auto Stores, Inc.*

■■■ The 1959 proceedings in the case at bar were had in the former Municipal Court of Chicago. Certainly that court had the right and power to hear and determine the class of cases to which this case belongs, *i.e.*, bastardy cases. (Ill. Rev. Stat. 1959, ch. 37, par. 357; see *People ex rel. Lloyd v. Starks* (1959), 22 Ill. App. 2d 1, 159 N.E.2d 11.) The two-year provision of the Bastardy Act did not affect the court's general jurisdiction over such actions, but merely constituted a condition of the right to maintain such an action. The fulfillment of this condition may not now be challenged. Where, as in this case, the subject matter of the litigation is within the general jurisdiction of the trial court, the claim of want of jurisdiction by reason of the existence of exceptional or special circumstances cannot be made for the first time on appeal. *Central Pattern & Foundry Co. v. Industrial Com.* (1940), 374 Ill. 300, 29 N.E.2d 511.

■■ The real question posed by defendant concerns jurisdiction of this particular case, rather than a general jurisdiction of the subject matter. In

such cases, the rule is that where the parties have adjudicated their rights before the court to a final judgment without objection to the court's right to hear the cause, the parties will be bound on appeal so far as the question of jurisdiction over the particular case is concerned. (*In re Estate of Fisher* (1951), 409 Ill. 420, 100 N.E.2d 564; *Pocahontas Mining Co. v. Industrial Com.; Grier v. Cable* (1895), 159 Ill. 29, 42 N.E. 395.) Thus, our conclusion that defendant is bound and may not now challenge the court's jurisdiction to hear this case in 1959.

■■ As noted, defendant also challenges for the first time the 1959 court's jurisdiction over the cause concerning Ronald. He points out that the record contains no complaint, finding, or support order from that proceeding. Defendant argues that such requisites are jurisdictional under section 4 of the Paternity Act (Ill. Rev. Stat. 1959, ch. 106¾, par. 54), and, once again, must affirmatively appear in the record since the presumption of jurisdiction does not exist on appeal in such cases. We reject this contention for reasons identical to those stated above relating to the paternity action concerning Angeletta.

■■ ■ In addition, we would note that the points relied on by defendant do not go to the jurisdiction of the court at all. Rather, in our view, defendant is arguing that the statutory requirement that such actions be instituted by the filing of a complaint was not fulfilled. However, the rule is that a reviewing court will presume that statutory requirements were complied with where it is necessary to sustain the decision. (See *Nugent v. Toman* (1939), 372 Ill. 170, 23 N.E.2d 43.) As to the lack of a finding or support order in the record, we note that defendant's answer to the 1975 petition for rule to show cause admitted the support order alleged by plaintiff concerning Ronald. He is bound by this admission on appeal and may not now take a position contradictory to his pleadings. *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.

Defendant contends secondly that plaintiff, as concerns support due for Ronald, waived her right to arrearages. He argues that plaintiff signed an agreement to waive such arrearages in 1971, at the same time that custody of Ronald was transferred to defendant. While plaintiff denied the signature on the waiver agreement, defendant argues that the court entered an order based on this agreement in 1971, which order cannot be attacked more than 3½ years after its entry by the filing of the instant action.

It appears from the record before us that defendant was brought before the court on the matter of support arrearages in 1971. At that time it was pointed out to the court that a change in custody was imminent and a continuance was granted. On April 27, 1971, the court read into the record the alleged waiver agreement, noting that it had been submitted by one of the parties. The trial judge attempted to inquire of plaintiff

whether she had signed it, but she was not present in court. A continuance was then granted until June 8. On that date the court was informed that custody of Ronald had been transferred to defendant, and a copy of the juvenile court order to this effect was submitted. The court then concluded the proceedings by announcing:

"Order of Court, all arrearages for support are waived and continued generally. Cash bond released."

We must disagree with defendant's contention that this 1971 pronouncement by the court operated to eliminate any child support arrearages.

The rule is that a properly entered order becomes final 30 days after its rendition and, in the absence of appropriate motions or extensions of time, is not subject to modification by the trial court thereafter. (*Green v. Green* (1974), 21 Ill. App. 3d 396, 315 N.E.2d 324; Ill. Rev. Stat. 1971, ch. 110, par. 68.3.) However, we find that the alleged order of June 8, 1971, does not appear to have been properly entered so as to come within this rule.

■■ Supreme Court Rule 272 (Ill. Rev. Stat. 1971, ch. 110A, par. 272) provides:

"If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record."

Prior to Rule 272 a pronouncement in open court constituted an entry of judgment in a law case, while a written record entry constituted an entry of judgment in an equity case. (*Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.) Rule 272 abolished this distinction and makes it clear that in both law and equity cases a mere oral pronouncement is not effective as an entry of judgment. See *Scott v. Dreis & Krump Manufacturing Co.; Green v. Green.*

■■ The burden was on defendant to provide the court with a written order of judgment in the 1971 proceedings. Supreme Court Rule 271 (Ill. Rev. Stat. 1971, ch. 110A, par. 271) provides as follows:

"When the court rules upon a motion other than in the course of trial, the attorney for the prevailing party shall prepare and present to the court the order or judgment to be entered, unless the court directs otherwise."

The trial on paternity had been concluded and the support orders entered in 1959. The judge's 1971 ruling on the contempt motion thus falls within

the confines of Rule 271, and it was incumbent on defendant to provide a written order of judgment, unless directed otherwise. (*Stewart v. Stewart* (1975), 35 Ill. App. 3d 236, 341 N.E.2d 136.) There is no indication in the record before us that the court directed otherwise. Nonetheless, no written order under Rule 271 was ever made.

■■ Furthermore, assuming *arguendo* it was not incumbent upon defendant to provide such a written order, Rule 272 still requires a written record of judgment before that judgment is considered entered. At a minimum Rule 272 states that an order would only be deemed entered when the judgment was "entered of record." This phrase, in turn, has been held to mean that a written entry of judgment must be made in the Law Record book. (*Scott v. Dreis & Krump Manufacturing Co.*) The record reveals no such entry of the 1971 judgment.

■■ Thus, the order alleged by defendant was not effective. It was never entered of record and could not become a final order under section 68.3 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, par. 68.3.) Until some written order or entry of record is made, the court's announcement of a final judgment is not enforceable. (*Stewart v. Stewart; Green v. Green.*) Therefore, the support order concerning Ronald remained effective and the trial court retained jurisdiction over the matter of support payments. It could thus entertain the instant action on arrearages under that order. The only final orders appearing in the record before this court are the 1959 support orders and the 1975 finding of contempt for failure to pay such support.

■■ Defendant next contends that the evidence concerning arrearages, specifically the social services department report, was improperly admitted. He first argues that such evidence violated the best evidence rule, and that the clerk's records or copies thereof should have been submitted instead. We disagree. The best evidence rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact may have been reduced to, or is evidenced by, a writing. (*Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 334 N.E.2d 96.) In the instant case the issue was whether defendant had paid all child support due under the 1959 orders. This question of the existence of arrearages is a fact independent from any writing, and hence the writing is merely collateral or incidental. (See 29 Am. Jur. 2d *Evidence* §449 (1967).) The existence of arrearages was readily ascertainable from, and proven by, the testimony of both plaintiff and defendant to the effect that very few support payments had in fact been made. Thus, the best evidence rule is not applicable to the case at bar. *Cf. Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.*

■■ We must also reject defendant's contention that the social service

report was inadmissible in that it constituted hearsay evidence. It is a well-settled exception to the hearsay rule that records kept by persons in public office, which they are required either by statute or by the nature of their office to maintain in connection with the performance of their official duties, are admissible in evidence and constitute evidence of those matters which are properly required to be maintained and recorded therein. (*People ex rel. Wenzel v. Chicago & Northwestern Ry. Co.* (1963), 28 Ill. 2d 205, 190 N.E.2d 780.) The report of arrearages introduced into evidence in this case falls within this rule. The social services department was originally established as part of the former Municipal Court of Chicago (Ill. Rev. Stat. 1961, ch. 37, par. 368a), with power in the chief justice thereof to appoint the director and other personnel of the department. Since the abolishment of the municipal court as a distinct entity effective January 1, 1964 (Ill. Const. 1870, art. VI (1964), §5), the department has operated as an administrative unit of the circuit court of Cook County. (See General Order 1-5 of the Circuit Court of Cook County; also see Director of Administrative Office of the Illinois Courts, 1975 Annual Report to the Supreme Court of Illinois 39.) Therefore, the report in the instant case, which must necessarily be compiled in performance of the department's duties, was properly admissible under the aforementioned exception to the hearsay rule.

■■ The fourth issue raised by defendant, that the trial judge erred in failing to recuse himself, is equally without merit. The rule is that a judge shall disqualify himself where financial, or other conflicts of interest exist (Ill. Rev. Stat. 1973, ch. 110A, pars. 66, 67), or where he otherwise cannot act impartially. (46 Am. Jur. 2d *Judges* §86 (1969); 23 Ill. L. & Prac. *Judges* §11 (1956).) No such conflicts or partiality are evident in the instant case. Rather, defendant bases his argument on the fact that Judge Bowe improperly usurped the place of Judge Welfeld, before whom earlier proceedings had occurred in this case in 1974. This argument is wholly without merit. When defendant told the court that these matters were pending before Judge Welfeld, the court reminded defendant that Judge Welfeld was no longer with the court. Defense counsel then responded he had no objection to Judge Bowe hearing the case. No cause for recusal appears from this record.

■■ Defendant further contends that the court erred in finding him in contempt. Failure to pay child support is *prima facie* evidence of contempt. (*Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633.) The failure to pay, however, must be willful (*Mesirow v. Mesirow* (1931), 346 Ill. 219, 178 N.E. 411), and a defendant should be allowed to show he has a defense. *Cole v. Cole* (1967), 85 Ill. App. 2d 105, 229 N.E.2d 293.

■■ The test is whether defendant has satisfactorily established that his failure was due entirely to his inability to pay. (*Storm v. Storm.*) No

such showing appeared in the instant case, while nonpayment of support was unequivocally demonstrated. Defendant relies on the alleged 1971 order waiving arrearages to indicate that his failure to pay support for Ronald was justified. We have indicated no such order was entered in 1971 and defendant cannot thereby excuse his nonpayment of support. In addition, defendant's testimony that he sent six money orders of $15 each in 1974 for support of Ronald, after the 1971 proceedings, contradicts his claim that he relied on the 1971 order as a waiver of arrearages. We conclude that the trial court correctly found defendant in contempt for failure to make payments as ordered.

■■ Finally, defendant contends that the proceedings in the trial court denied him due process of law. His basis for such argument is that the 1975 court could not act on this cause due to the failure of the record to reflect valid 1959 complaints in both cases, and the failure of the record likewise to show a 1959 court hearing or finding in the case concerning Ronald. We have previously dealt with these issues and have indicated that they fail to affect the validity of the court's actions or proceedings in the instant case. As to the 1975 proceedings, there was clearly no denial of due process. Defendant was served with the written charges against him and he was given a reasonable opportunity to meet those charges before the trial court.

For the foregoing reasons the order of the circuit court of Cook County finding defendant in contempt for failure to pay child support, and granting judgment in favor of plaintiff for arrearages, less credits due defendant, is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.