THE DEPARTMENT OF PUBLIC AID, Claimant-Appellant, *v.* THE ESTATE OF OPHELIA WALL, Respondent-Appellee.

Fifth District   No. 79-169

Opinion filed March 5, 1980.

KARNS, J., dissenting.

William J. Scott, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellant.

Law Offices of Ralph T. Stenger, of Belleville (William F. Kopis, of counsel), for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The Department of Public Aid of the State of Illinois (Department) appeals from an order of the circuit court of St. Clair County which denied a claim against a decedent's estate for medical assistance furnished the decedent.

Upon the opening of decedent's estate the Department filed its claim. The claim, in affidavit form, was executed by James E. Arth acting as an authorized representative of the Department. It avers that the estate is indebted to the Department, after allowing all credits, deductions and

setoffs in the amount of $6,488.19. The claim further avers that attached and made a part of the affidavit is a true and correct itemized statement of the account. The affidavit of claim concludes with the notarized signature of James E. Arth.

The attached "itemized account" recites that the estate of Ophelia Wall is indebted to the Department for money paid to and in behalf of Ophelia Wall during her lifetime under the terms of the Illinois Public Aid Code for:

> "Old Age Assistance paid to Ophelia Wall from June 1975 to and including December 1976     $570.16
>
> Paid on behalf of Ophelia Wall for Medical Supplies or Services from June 1975 to and including January 1978     $5,918.03
>
> ASSISTANCE AWARD TOTAL     $6,488.19
>
> Of the above, $570.16 is secured by a lien, and upon payment of the lien, is reduced accordingly."

Thus, by reason of the reduction of the claim by the lien amount, the net amount of the claim asserted was $5,918.03.

The executrix of the will of decedent filed a response to the claim in which she asserted (1) she was without sufficient information to admit or deny the claim, and (2) the claim fails to state in detail the disposition of the funds allegedly paid on behalf of the deceased. The response concluded with a prayer that the court require the claimant to appear and support its claim by strict proof. The response was unverified.

A nonjury hearing was held on the claim. The attorney for the Department advised the court that there was a stipulation that "this woman had a green card, a medical card, from the Department of Public Aid, had a green card." This recited stipulation was not denied by the attorney for the executrix. As its only proof in support of the claim the Department offered the certificate of the director of the Department which listed the payments made on behalf of the decedent by the Department.

The certificate consists of two pages and is entitled at the top of the first page: "CERTIFICATION REGARDING DIRECT MEDICAL PAYMENTS." Next, the venue of the certification is placed as State of Illinois, County of Sangamon. The body of the certificate reads as follows:

> "I, Arthur F. Quern, Director of the Illinois Department of Public Aid under the authority of Section 10—13.4 of the Public Assistance Code of Illinois do hereby certify that the following Direct Medical Payments in the total amount of $5,918.03 charged

to the assistance payment account of Ophelia Wall, MANG (A) 111-24131 were paid in his or her behalf:

[payments listed]

The records of these payments are now on file in the offices of The Illinois Department of Public Aid and as such are a part of the records and files under my keeping as Director of the Illinois Department of Public Aid."

The certificate concludes with a blank for the date, which is not completed, and the stamped, facsimile signature of Arthur F. Quern, the director of the Department.

The certificate lists 63 separate payments for an assortment of medically related items. The purpose of each payment is shown in a column opposite its date and amount. Representative purposes of payments shown are pharmacy, transportation, physician, hospital, laboratory and nursing home. Thirteen of the 63 items are shown as collections of bills and are entitled "Twenty-one bills," "Ten bills," etc. The payments were made between June 1975 and March 1978; the smallest amount was $1.40 (for laboratory) and the largest was $533.69 (for "Twelve bills").

The certificate was admitted into evidence over the objection of the executrix. It was the only evidence submitted in support of the claim. After hearing arguments of counsel the court took the matter under advisement and subsequently entered an order in which no findings were made, the order simply reciting "Claim denied." We reverse.

The crux of the Department's position is that the certificate of the director constitutes sufficient proof of the payments made to or on behalf of the decedent and that it was properly admitted into evidence under the public records exception to the hearsay rule. Since the executrix never made any denial that the payments were in fact made and the certificate was the only evidence presented in the case, the court erred in denying the claim.

The position of the executrix is that the certificate shows on its face that it is not a certification of a copy of the records of the Department but rather a certification of conclusions reached as a result of someone's inspection of the records. They argue that the Department would have the court extend the meaning of section 10—13.4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 10—13.4) far beyond its language and legislative intent.

It is our perception of this case that the trial court was unduly restrictive in according the proper weight to the certificate of the director. Although the certificate was admitted into evidence, and it was the only evidence to be introduced by either party, the court apparently declined to give it any probative value. This was error.

We have an initial word regarding the nature of a certificate. No statutory definition is found. The meaning of the word may vary somewhat with the context of its use. The context of its use in this case is that of testimony in writing by a State official. In 14 C.J.S. "Certificate" 111 (1939), a certificate is defined in its application in this case as:

> "A certificate in its most general and widest sense has been defined as meaning a certain assurance of that which it states; a declaration in writing; an authoritative attestation * * *.
>                        * * *
>
> Strictly speaking, a certificate by a public officer may be said to be a statement written and signed, but not necessarily or usually sworn to, which is by law made evidence of the truth of the facts stated for all or for certain purposes."

*People ex rel. Ryan v. Nordheim* (1881), 99 Ill. 553, states a definition of certificate that accords with the C.J.S. definition.

There are two bases which would require the certificate in question to be admitted into evidence as proof of the information it contains. It would be admissible under the common law exception to the hearsay rule applicable to public records and it would be admissible pursuant to section 10—13.4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 10—13.4).

■■ Even in the absence of section 10—13.4 of the Illinois Public Aid Code, to be discussed later, the certificate of the director should have been admitted into evidence and accepted as proof of the facts asserted therein by application of common law rules.

> "At common law it has long been settled as an exception to the hearsay rule that records kept by persons in public office, which they are required either by statute or the nature of their office to maintain in connection with the performance of their official duties, are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein. (*Lane v. Bommelmann*, 17 Ill. 95; *Carlin v. Chicago and Western Indiana Railroad Co.*, 297 Ill. 184; *Bell v. Bankers Life & Casualty Co.* 327 Ill. App. 321; 32 C.J.S., Evidence, sec. 644; 5 Wigmore on Evidence, 3rd ed. secs. 1631, 1670; Cleary, Handbook of Illinois Evidence, sec. 13.37.) This exception, as pointed out by Professor Cleary, is 'based upon the assumptions that public officers will perform their duties and are without motive to falsify, and that public inspection, to which some such records are subject, will disclose inaccuracies.' " *People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 211-12, 190 N.E.2d 780, 784.

There is no question that the records of the Illinois Department of

Public Aid are public records or that the director of that department is a public official. Accordingly, the foregoing rule and reason are applicable here.

The executrix seeks, though, to disparage the worthiness of the certificate furnished for proof of this claim because it does not contain the actual copies of the documents involved but purports to be merely a summary of the actual documents in the files of the Department. But this particular objection to the form of the certificate cannot find support in the cases. Summarizations and compilations by officials are regularly countenanced and have found ready acceptance as evidence in courts. The Federal Rules of Evidence expressly authorize them.

In the *Wenzel* case the supreme court ruled admissible the results and conclusions of property valuation studies made by the Department of Revenue from a mass of data assembled by field personnel.

In *People ex rel. Person v. Miller* (1977), 56 Ill. App. 3d 450, 371 N.E.2d 1012, a caseworker for the Illinois Department of Social Services testified that she had compiled a report which showed child-support payments that had been made by one of the parties. The information contained in the report had been obtained by another individual in the office of the witness via telephone from the circuit clerk's office and the witness had no personal knowledge as to whether the financial reports were true and correct. The witness stated that the report was prepared in the normal course of her duties as social worker. The individual who had telephoned the clerk's office also testified to the compilation of the information contained in the report. The appellate court relied upon the *Wenzel* case and held the report admissible.

Although not applicable here Rule 803(8) of the Federal Rules of Evidence serves to illustrate the wide latitude utilized by courts in ruling upon the admissibility of official reports and statements. The rule provides:

"Rule 803

\* \* \*

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) Public records and reports.

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency \* \* \*."

■■ The only justification for admission of the certificate is not the common-law rule discussed above. There is a statute which expressly governs the proof of the claim in this case. We have discussed the common-law rule first, and perhaps gratuitously, to illustrate the breadth of its application. By the executrix's interpretation of the statute we now

consider, the legislature would have intended to constrict the common-law rule relating to the admission of official records and reports. In the context in which the statute is placed, and giving consideration to the magnitude of the workload of the Department,[1] it should be obvious that if the legislature intended to deviate in any respect from the common law rule, the intent was to expand it.

The statute to which we refer is section 10—13.4 of the Illinois Public Aid Code. The certificate in question here states expressly that the claim is made pursuant to its provisions. The statute reads:

> "Proof of Records.) The books, papers, records and memoranda of the Illinois Department or of the administrative enforcement, unit, or parts thereof, may be proved in any hearing, investigation, or legal proceeding by a photostatic or other copy thereof under the certificate of the Director of the Illinois Department. Such certified copy shall, without further proof, be admitted into evidence in the hearing before the Illinois Department or in any other legal proceeding."

We have not been cited, and by our own research have been unable to discover, any Illinois case which considers the breadth and reach of this statute. We think it is at least as broad as the common-law rule and Rule 803(8)(a) of the Federal Rules of Evidence. It requires admission of the director's certificate into evidence and, in the absence of countervailing evidence, acceptance as credibly proved the information the certificate contains.

Section 1—5 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 1—5) provides that the provisions of the Code are to be liberally construed. With this in mind, and considering the background of the statute, it is evident that the statute is specifically applicable to the director's certificate in question. The books, papers, records and memoranda of the Department, *or parts thereof* are to be admitted into evidence, without further proof, upon the certificate of the director.

The compilation of purposes of payments, dates and amounts of payments are, at the very least, parts of the books, records, papers and memoranda of the Department. The reference in the second sentence of the statute to "such certified *copy*" (emphasis added) must be read as "such certificate" or the obvious purpose of the statute would be defeated and the common-law rule severely constricted.

---

[1] For the month of December 1979 there were over 870,000 persons on the rolls of the Illinois Department of Public Aid for medical assistance pursuant to section 5—2 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 5—2). This information is available from monthly published reports of the Department and may be judicially noticed. *Ballew v. Edelman* (1975), 34 Ill. App. 3d 490, 340 N.E.2d 155; *Thurman v. Department of Public Aid* (1974), 25 Ill. App. 3d 367, 323 N.E.2d 502.

The reasoning underlying the official records exception to the hearsay rule and the applicability of the statute is not misapplied in this case. We are not concerned with transactions entered into in the ordinary course of business. The adversarial aspects of the marketplace are missing. Rather, we are concerned with the conduct of governmental affairs by an agency of State government. Their activities, and the rights of the decedent, are fixed and determined by statute. The particular transactions summarized on the certificate consisted of mailing checks or warrants for money to or on behalf of the decedent. Such payments are a matter of grace by the State of Illinois. The process of establishing entitlement to payment, the lodging of bills, the drawing of warrants and the writing of checks is very involved and repeated many thousands of times every month by the Department, acting in conjunction with other officials and agencies of the State. How much proof of their acts and doings with respect to each individual recipient is enough? To require the Department to backtrack from every single payment authorization, to produce the warrant, retrieve the cancelled check and prepare certified copies of every document utilized in every payment would create an impossible and intolerable burden on State government. The director of the Department is neutral. He had nothing to gain by falsification. Proper performance by him of his statutory duties is commanded by the position he holds.

Professor Wigmore in section 1631 of his work on the Law of Evidence says it in this manner:

"The public officers are few in whose daily work something is not done which must later be proved in court; and the trials are rare in which testimony is not needed from official sources. Were there no exception for official statements, hosts of officials would be found devoting the greater part of their time to attending as witnesses in court or delivering their depositions before an officer. The work of administration of government and the needs of the public having business with officials would alike suffer in consequence." 5 Wigmore, Evidence §1631, at 618 (Chadbourne rev. 1974).

For the foregoing reasons we find the certificate of the director of the Department admissible into evidence and competent proof that the estate of Ophelia Wall is indebted to the Department in the amount of $5,918.03. Accordingly, the order of the trial court is reversed and remanded with directions to enter an order allowing the claim of the Department in the amount of $5,918.03.

Reversed and remanded with directions.

KASSERMAN, J., concurs.

Mr. JUSTICE KARNS, dissenting:

I do not agree that the statute relied upon by the majority (Ill. Rev. Stat. 1977, ch. 23, par. 10—13.4) is sufficient, without more, to prove the Department's claims. To my reading, the statute is simply a means for authenticating certified copies of Department records, thereby rendering them competent evidence.

I do not believe that the tabulation of bills here presented constitutes a Department "record" within the meaning of the statute. Section 10—13.4 provides in pertinent part that:

> "The books, papers, records and memoranda of the Illinois Department or of the administrative enforcement unit, or parts thereof, may be proved in any hearing, investigation, or legal proceeding by a *photostatic or other copy thereof* under the certificate of the Director of the Illinois Department or the County Superintendent. * * * "(Emphasis added.)

The tabulation presented by the Department was not a "photostatic or other" copy of payment records in Wall's behalf; it was a typewritten list of myriad expenditures whose sums were totalled in the director's certificate. Neither the court nor the appellee was provided with any means of ascertaining whether the bills in fact belonged to decedent or that the represented sums were compiled accurately. (See *In re Estate of Buddeke* (1977), 49 Ill. App. 3d 431, 364 N.E.2d 446, and *Grand Liquor Co. v. Department of Revenue* (1976), 36 Ill. App. 3d 277, 343 N.E.2d 555.) I do not regard as sufficient the Department's assertion that "a record of these payments are now on file in the offices of the Illinois Department of Public Aid and as such are part of the records and files under my keeping as Director of Public Aid," because it places the burden of proving the Department's claim on the opposing party.

While voluminous documents may be presented properly in tabular form, the moving party should supply the basis for tabulation. Professor Wigmore notes that "[m]ost courts require, as a condition [of admitting a summary] that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available." 4 Wigmore, Evidence §1230, at 535 (Chadbourne rev. 1972).

The affidavit of the director imports verity as to the existence and accuracy of Department records. However, the records remain subject to cross-examination as to their factual basis and the accuracy of their compilation. It is necessary for effective cross-examination that records of the individual expenditures be supplied; otherwise, scrutiny is limited to the Department's arithmetic in computing the total.

The majority dwell at length on the public records exception to the hearsay rule as independent grounds for admission of the tabulation, although the decision rests on the cited statute. The Department apparently did not rely on the common-law exception, judging from the record, as they presented no evidence as to the nature or performance of public duty in the keeping of the records.

Accordingly, I would affirm the judgment below.